# Garber *against* Henry.


A mortgage may be taken and held as a security for future advances and responsibilities, provided the record of the lien contain information of the extent and certainty of it, so that a junior lien creditor may, by inspection of the record and by common prudence and ordinary diligence, ascertain the extent of the incumbrance.

ERROR to the common pleas of *Huntingdon* county.

*Scire facias sur* mortgage. Garber and O'Connor against George W. Henry, with notice to terre-tenants. On the 8th of November 1832, the defendant executed a mortgage to the plaintiffs, of a tract of land which contained this clause, " Provided, nevertheless, that if the said George W. Henry, his heirs, &c., shall and do well and truly pay or cause to be paid to the said Garber and O'Connor, the several sums of money which he may, from time to time, owe or be indebted to the said Garber and O'Connor, at the days and times appointed for the payment thereof, according to the terms and conditions of an article of agreement entered into between the said parties; then this indenture to be null and void, otherwise to remain in full force and virtue." Recorded on the 7th of January 1833.

VI.—H

[Garber v. Henry.]

The articles of agreement between the same parties were not recorded, but were as follows:

" Articles of agreement, made this 8th day of November 1832, between Garber and O'Connor, of the town of Hollidaysburg, of the one part, and Captain George W. Henry, of Blair's Gap, of the other part; witnesseth, that the said Garber and O'Connor hereby agree to sell and furnish unto George W. Henry, 1200 dollars worth of goods, namely, dry goods and hardware, at an advance of 8 per cent. on the cost of said goods in Philadelphia, and the price of carriage and laying in of said goods or buying them. Further, said Garber and O'Connor hereby agree to give a credit to said Henry, for the goods, until the 1st day of April 1833; and they agree to furnish goods to the amount of 300 dollars, in addition to the above 1200 dollars, said Henry paying for said 300 dollars worth of goods, on the 1st day of December next, or sooner should the estimate on the rail road be paid before that time. George W. Henry, on his part, hereby agrees to give said Garber and O'Connor a mortgage on the property he purchased from George Buchanan and his son, Alexander Buchanan, and said mortgage to include the lot situate in the town of Gaysport, it being the same which he purchased from Garber and Jackson. Further, said Henry agrees to pay unto Garber and O'Connor all sums of money which he may owe them for goods, or otherwise, over and above 1200 dollars, at each and every estimate that will be paid on the rail road, until the 1st day of April 1833, at which time said Henry agrees to pay said 1200 dollars. It being understood that said mortgage is given by Henry, as security, to Garber and O'Connor, that said Henry will faithfully comply with the terms of this agreement. It being further understood that said Henry may, at any time previous to the 1st day of April next, draw goods to the amount of 300 dollars, in addition to the 1200 dollars, he paying for said goods at the first estimate on the rail road, after said goods shall have been drawn."

The amount of goods purchased by the defendants previously to the 1st of April 1834, was 1283 dollars 15 cents; the whole amount purchased, up to the 17th of December 1833, when the *scire facias* issued on the mortgage, was 1824 dollars 73 cents. On the 7th of May 1833, a judgment was obtained against George W. Henry by Michael Sieman, upon which the mortgaged property was levied and sold, on the 15th of January 1835, to D. W. Huling, Esq. The questions for the opinion of the court were, first, Are not the mortgage and the articles of agreement as a lien, void as to subsequent lien creditors? Second, If not, are the plaintiffs entitled to recover the sum of 1200 dollars only, or are they entitled to recover the whole amount of their account, which, with interest, amounted to 1934 dollars.

The court below was of opinion that the plaintiff was entitled

[Garber v. Henry.]

to recover only the 1200 dollars. Both parties excepted to the opinion, and each took a writ of error.

*A. P. Wilson,* for plaintiffs below, cited 9 *Serg. & Rawle* 434; 1 *Yeates* 579; 2 *Eq. Ca. Abr.* 611; *Pow. on Mort.* 15; 4 *Kent's Com.* 175; 2 *Penns. Rep.* 439; 1 *Watts* 54.

*Huling* and *Miles,* contra, contended, that a mortgage derived its validity as a lien from the recording acts of 1705 and 1820. And if the agreement was an essential part of the mortgage, the law requires that it should be recorded. But certainly the parties did not contemplate that the account to be secured by it, should exceed 1200 dollars, or that it should be contracted after the 1st of April 1833.

The opinion of the Court was delivered by

SERGEANT, J.—The character of this instrument cannot admit of dispute. It is not, as in Friedly *v.* Hamilton, 17 *Serg. & Rawle* 70, a deed absolute on its face, and made a mortgage by a defeasance not recorded, but is, in its terms, a mortgage. The contents of the articles of agreement, if inserted at length, would not render the instrument more conditional in its character. The only doubt as to its validity, is, whether the omission to record the articles renders it null as to subsequent lien creditors. Though there have been some doubts entertained of the effect of a mortgage to secure the mortgagee against debts or responsibilities not then incurred, and therefore not appearing of record, yet the case of Lyle *v.* Duncomb, 5 *Binn.* 585, is a decisive authority as to the validity of such arrangement; and it seems to be settled, by the cases cited 4 *Kent's Com.* 175, that the law is, that a mortgage or judgment may be taken and held as a security for future advances and responsibilities to the extent of it, when this is a constituent part of the original agreement; and the future advances will be covered by the lien, in preference to the claim under a junior intervening incumbrance with notice of the agreement. A mortgage is always good to secure future loans when there is no intervening equity. It is necessary that the agreement, as contained in the record of the lien, should give all the requisite information of the extent and certainty of the contract, so that a junior creditor may, by inspection of the record, and by common prudence and ordinary diligence, ascertain the extent of the incumbrance. Here the record contained notice of the articles and a judgment creditor could, by inquiry, ascertain these terms and understand the extent to which the incumbrance went, and has no equity against the mortgagee, as to claims subsisting when the lien of his judgment attached.

But what was the extent to which the goods to be furnished by the mortgagee were covered by the mortgage? I think it clear

that it was limited to the 1st of April 1833. For all sums over 1200 dollars, the payments were to be made before that time; and for the 1200 dollars, the credit was only "until the 1st of April 1833," when, it would seem, their transactions were to close.

The plaintiffs are, therefore, entitled to judgment for the amount of goods sold, prior to the 1st of April 1833, (stated to be 1283 dollars 15 cents,) with interest from that date, to the sheriff's sale.

Decree of the court below reversed, and judgment for the plaintiffs accordingly.