The Bank of Utica v. Finch.

---

## The Bank of Utica vs. Finch and others.

Where a bond and mortgage are actually given to secure a particular debt men-
tioned therein, the mortgagee cannot, as against subsequent purchasers or incum-
brancers, hold the mortgage as a lien for an entirely distinct and separate debt,
upon parol proof that it was intended to cover that debt also.

But where the mortgage is given to secure a particular debt with a condition to be
void upon the payment of that debt, the mortgagee does not lose his security by
the mere extension of the time of payment; although that extension is in the
form of a renewal of the note which was given as a collateral security for the
payment of the same debt; where it was not the intention of either party to
discharge the mortgage security by such renewal of the note.

A mortgage, or a judgment, may be given to secure future advances; or as a gen-

eral security for balances which shall be due, from time to time, from the mortgagor, or judgment debtor.

And this security for future advances may be taken in the form of a mortgage, or judgment, for a specific sum of money, sufficiently large to cover the amount of the floating debt intended to be secured thereby.

Where an appeal, by the defendants in a foreclosure suit, has prevented the complainants from obtaining the master's report, and a final decree, for a long time, during which time the respondents have been kept out of the possession of the mortgaged premises, and of the rents and profits thereof, the appellants may be directed to pay to the respondents the rents and profits of the mortgaged premises during the time for which the proceedings have been stayed, by the appeal, or so much of them as may be necessary to pay the deficiency; as the damages of the respondents for the delay and vexation which they have sustained by the appeal, if upon the foreclosure and sale of the premises, under the decree which is finally entered in the suit, it shall turn out that the proceeds of the mortgaged premises are not sufficient to pay the amount due to the complainants, with interest and costs. And if necessary, a reference may be directed, to ascertain the amount of such rents and profits.

THIS was an appeal by the Bank of Rochester, one of the defendants in this cause, from an interlocutory decree of the vice chancellor of the eighth circuit. The bill was filed to foreclose a mortgage upon certain real estate in the county of Monroe, owned by the defendant H. Finch at the time of the execution of the mortgage; under the following circumstances:

Previous to the execution of the mortgage, and at that time, Finch was a dealer with the Bank of Utica, in borrowing money and having notes and drafts discounted by the bank for his benefit. On the day of the date of the mortgage his liabilities to the bank exceeded $34,000; and as he wished to continue his business with the institution, Finch and his wife agreed to give a mortgage, to cover the liabilities to the bank from time to time, including new discounts and renewals of paper, and subsequent loans. The mortgage in question was accordingly given, on the 10th of September, 1839, and was duly recorded in the county where the mortgaged premises were situated. The condition of the mortgage, however, instead of stating truly the object for which it was given, contained an absolute grant of the premises, in the usual form, and without making the grant defeasible upon the payment of the money

The Bank of Utica v. Finch.

intended to be secured; and it concluded as follows: "This grant is intended to secure the payment of $30,000 paid to the parties of the first part by the party of the second part. And in case default shall be made in the payment of the principal sum hereby intended to be secured, or in payment of the interest thereof, or any part of the said principal or interest, it shall be lawful for the parties of the second part, or their successors, at any time thereafter, to sell the premises hereby granted, or any part thereof, in the manner prescribed by law," &c. The paper of Finch, held by the bank at the time of the giving of the mortgage, was renewed or exchanged from time to time, till November, 1841. The average indebtedness for which the mortgage was holden as a security was about $30,000 during the time; renewals being made and new paper being discounted from time to time, by the bank, upon the security of the mortgage. But of the old paper held by the bank, at the date of the mortgage, only about $8000 remained unpaid or unrenewed. In December, 1841, Finch made an assignment of his interest in the mortgaged premises to Dixon and Young, in trust for the payment of his debts. In January, 1842, the Bank of Rochester recovered a judgment against H. Finch, the mortgagor, for an amount exceeding $10,000. But as he had previously assigned all his interest in the mortgaged premises, that judgment did not become a lien thereon.

On the first of August, 1842, the complainants filed their bill in this cause, to foreclose the mortgage, making Finch and wife, the assignees of the mortgaged premises, and some other persons, parties thereto; but the Bank of Rochester was not made a party. A notice of the pendency of the suit and of the object thereof was filed with the clerk of the county of Monroe on the 8th of September thereafter. The Bank of Rochester, upon a petition stating the recovery of its judgment against Finch, but without stating that he had assigned the equity of redemption in the mortgaged premises, before the recovery of that judgment, obtained an order that the complainants should make the petitioners parties to the suit, and they were made parties accordingly. After the Bank of Rochester was made a

The Bank of Ut·ca *v.* Finch.

party to the suit, and after the bill as amended had been taken as confessed against the defendants Finch and his assignees, such assignees caused the equity of redemption in the mortgaged premises to be sold, and the Bank of Rochester became the purchaser of such equity of redemption. But as the complainants subsequently amended their bill, the order taking the bill as confessed was thereby opened, and the purchasers thereupon put in their answer denying the validity of the mortgage as a lien upon the premises. A replication to the answer was filed, and the cause was subsequently heard upon pleadings and proofs as to the Bank of Rochester, and upon the bill taken as confessed as to the other defendants. The vice chancellor decided and decreed that the mortgage was a valid lien upon the premises, (except a small portion released from the mortgage, and not the subject of controversy in this suit,) for the amount of the several debts stated in the complainants' amended bill, as due and unpaid; all of which debts were contracted before the assignment of the mortgaged premises to Dixon and Young for the benefit of creditors. He therefore directed a reference to a master to compute the amount due; and authorized the complainants to apply for a decree of foreclosure and sale of the mortgaged premises upon the coming in of the master's report.

The vice chancellor delivered the following opinion :

F. WHITTLESEY, V. C. The defence in this case rests principally upon the language of the condition of this mortgage. The defendant's counsel insists that this instrument, upon its face, shows that it was executed to secure money before that time paid to the mortgagor, and that it applies only to the paper then held by the complainants, which when paid was a payment to that extent upon the mortgage; that it does not cover new paper, discounted after the making of the mortgage; and that parol evidence is not admissible to show for what paper the mortgage was executed, or upon what confidence the subsequent discounts were made, or to explain in any manner the written instrument itself. If this view of the case

is sustained, it would reduce the lien of the mortgage, as against the Bank of Rochester, to that portion of the original indebtedness of Finch which has continued from the making of the mortgage down to the present time, by successive and direct renewals. This part of the original indebtedness only amounts to $8000; and from that sum, in this aspect of the case, should be deducted the $3500 received by the complainants upon the release of the portion of the mortgaged premises which was sold.

A mortgage may unquestionably be taken and held as a security for future advances and responsibilities; and such future advances will be covered by the lien, to the extent of the sum mentioned in the mortgage, in preference to any claim under a junior incumbrance with notice. (4 *Kent's Com.* 175. *Kendrick* v. *Robinson*, 2 *John. Ch. Rep.* 309. *Brinkerhoff* v. *Marvin*, 5 *Id.* 326. *Janes* v. *Johnson*, 6 *Id.* 420.) This general principle is conceded; but it is contended that it is only applicable when the mortgage upon its face provides for security for future advances and responsibilities. This mortgage is taken to secure $30,000, stated therein to have been paid by the mortgagee to the mortgagor; and it is recorded for that sum, which is all that the record expresses. If there had been no money actually paid, would the mortgagor be prohibited, by his signature to the instrument, from showing that fact by parol? If the mortgagee had not advanced the money until three months after the execution of the mortgage, would he be prohibited from showing this fact by parol? Parol evidence must, it is apparent, in many such cases, be admitted, not to contradict the written instrument, but to show the purpose and intent for which it was executed. Such evidence is admissible even, to show that a deed absolute upon its face was intended as a security for money merely, (*Van Buren* v. *Olmstead*, 5 *Paige*, 9,) and other similar facts. I am, therefore, of opinion that the parol evidence objected to was admissible, not for the purpose of explaining the written instrument, but for the purpose of establishing the fact that credit had been given to Finch, upon the several discounts for him on the faith of the

The Bank of Utica v Finch.

mortgage, and that it was treated by the complainants as a continuing security.; so that if it was entitled to that character the complainant may have the benefit of it. (*Douglas v. Reynolds*, 7 *Peters*, 113.) It will be conceded that the doctrine of tacking does not prevail in this court, and it is not upon that ground, as I understand it, that the complainant rests the claim. Here is a mortgage, the record of which is notice to all of an incumbrance to the extent of $30,000. And I suppose the holder of that mortgage may advance upon it up to that amount, and may be secure in his lien to the extent of his advances, within that amount; such having been the agreement between himself and the mortgagor; unless indeed this lien should be affected by the equities of subsequent incumbrancers, or grantees, attaching previous to any advance. But here there was no right or pretended right of any grantee or incumbrancer attaching at all until after the advances were made. Whether the holder could safely make further advances after such subsequent incumbrance had attached or grant made, unless notice thereof had been given to the holder, is not a question here presented. It has been held that a judgment confessed for $2000 where there was but $1000 due at the time, would cover a future advance made under an agreement between the parties; and that an execution might issue for the whole. (*Livingston v. McKinley*, 16 *John. Rep.* 165) A doctrine very similar, and one which seems to me to cover this case, has been held in relation to mortgages. (*Shirras v. Cray*, 7 *Cranch's Rep.* 34.) But in no case, of course, can the holder of a mortgage enlarge his demand, by reason of it, to an amount beyond that which appears upon the record. (*St. Andrew's Church v. Tompkins*, 7 *John. Ch. Rep.* 14.) But up to that amount I suppose he may advance, by agreement with the mortgagor, and hold the mortgage as security for such advances; except as against subsequent incumbrancers or grantees who have given notice of their incumbrances or grants, prior to the advance.

In this case the Bank of Rochester acquired no lien, by virtue of its judgments, upon the mortgaged premises. Finch had

conveyed to his trustees, before the judgments were obtained. All the ti le the bank has is by virtue of its purchase from the assignees of Finch; by which the bank acquired the same title to redeem which the mortgagor would have had. This purchase too was made *pendente lite*, and was affected with notice of the complainant's claim. All the complainant's advances had been made before the conveyance by Finch to his assignees.

There is a point made between these parties as to the mill stones, bolts, carding machines, and other things, called and claimed as fixtures, which it seems hardly proper to pass upon in this stage of the case. The mortgage to the complainants was general, including the mortgaged premises and appurtenances. The conveyance from Finch to his assignees was the same, except that it mentioned fixtures, machinery and implements. The deed from the assignees to the Bank of Rochester was general, and referred to the trust deed. It does not purport to convey any personal property, describing it as such, or any thing but real estate. The doctrine as to fixtures varies in different cases, and is drawn from very numerous decisions. As between heir and executor, landlord and tenant, mortgagee and execution creditor, vendor and purchaser, different rules prevail. The doctrine as between vendor and purchaser is the most liberal, in making fixtures real estate, and having them pass with the land. And the same doctrine is applicable as between the mortgagor and mortgagee. (*Union Bank* v. *Emerson*, 15 *Mass. Rep.* 159. *Robinson* v. *Preswick*, 3 *Edwards' Ch. Rep.* 246.) And mill stones, bolts, and other machinery in a flouring mill were held to go with the lien and not to the executor. (*House* v. *House, in Chancery, March* 7, 1843.) Whatever may be the rights of these complainants as against an execution creditor of Finch, I am now inclined to think that they take as much by their mortgage as the Bank of Rochester can by their deeds. But this question can be decided upon an application for a decree of sale. The mortgage of the complainants must be held to be a lien for all the advances they have made to Finch upon the several notes and drafts set forth in their bill, and which yet remain unpaid; but

not beyond the amount specified in the mortgage. And it must be referred to a master to compute the amount due upon such drafts and notes, with interest, excluding the costs of the suits at law, (7 *Paige*, 437,) upon such notes or drafts, deducting from the aggregate thereof the amount of deposit to the credit of Finch, and the amount received upon the release of portions of the mortgaged premises; as set forth in the pleadings. All further questions are reserved until the coming in of such report. The complainant is to be at liberty to bring the cause to a hearing upon such report at any general or special term of this court, on due notice.

*A. Taber & M. T. Reynolds*, for the appellants. The complainants' mortgage being a specialty, cannot be enlarged or varied by parol evidence; there being no issue in the case upon any allegation of fraud, mistake, or accident. The complainants' rights and interests cannot rest partly in deed and partly in parol. An equitable mortgage, being created by parol, may, by the same means, be extended to cover future advances. But a legal mortgage, applicable in its terms to a subsisting indebtedness, cannot, by an oral agreement, be thus extended, in this or any other court. The sum of $3500 received of the Stanleys should be applied to extinguish so much of the original indebtedness, if any remains, covered by the mortgage. The Bank of Rochester, as a subsequent incumbrancer and purchaser of the equity of redemption of Finch, is entitled to redeem, on paying any balance due of the original consideration of the mortgage.

*A. Worden*, for the respondents. The Bank of Rochester has no lien upon the mortgaged premises by reason of its judgments against Finch; those judgments having been obtained after the assignment to Dixon and Young. Whatever rights that bank has, are under the deed from Dixon and Young, executed subsequently to the commencement of this suit. It is, therefore, a *mala fide* purchase, *pendente lite;* and the complainants, as against the Bank of Rochester, are entitled to the same

decree as they would be upon the bill taken as confessed by Dixon and Young. (7 *Paige*, 291. *Story's Eq. Pl.* 150, § 156. 1 *Story's Eq.* 393, § 406. *Murray* v. *Finnister*, 2 *John. Ch. Rep.* 155. *Heatley* v. *The Same*, *Id.* 158.)

The bill charges, and the evidence shows, that the mortgage was given to secure an existing liability from Finch to the Bank of Utica, at its execution; and such future indebtedness as he might thereafter be under, to the bank, on notes and bills discounted by such bank. A mortgage for these purposes was valid; and parol evidence is admissible to show the purposes for which it was given, and the amount secured by it. (5 *Paige's Rep.* 10. 1 *Id.* 77. 2 *John. Ch. Rep.* 309. 6 *John. Rep.* 417. 5 *John. Ch. Rep.* 326. 2 *Cowen*, 292. 7 *Cranch*, 40. 16 *John.* 165. 14 *Ves.* 606. 2 *Ves. & Beame*, 79, 83. 4 *John. Ch. Rep.* 373.) There is no question here between the complainants and bona fide purchasers or incumbrancers, arising under the recording act, or otherwise. The Bank of Rochester is not a bona fide purchaser, and can claim nothing as such. It has not averred, in its answer, that it is a bona fide purchaser without notice; which it should have done, to avail itself of the rights of such purchaser. (*Beame's Eq. Pl.* 246, 247. 1 *John. Ch. Rep.* 566. 2 *Id.* 155, 158. 3 *Id.* 345.)

The mortgage is for the specific sum of $30,000, and upon the principle for which the appellants contend, it must stand for that amount, between the parties. But the nature and extent of the interest of a mortgagee is not required, by the statute of frauds, to be in writing. The mortgage being executed according to the requirement of the statute, the object and intent of the parties, and the extent and application of the security, may be ascertained by parol; upon the same principle that parol evidence may be resorted to to show the mortgage debt has been paid, or assigned. (*U. S.* v. *Sturges*, 1 *Paine, C. C.* 530. 7 *Cowen*, 18, 19. 1 *John. Ch. Rep.* 128. *Hughes* v. *Edwards*, 9 *Wheat.* 495. 1 *Pow. on Mort. Rand's ed.* 143, 144. 14 *Ves.* 606. 17 *Id.* 227. *Ex parte Kensington*, 2 *Ves. & Bea.* 79, 83.) Under the circumstances, and the agreement upon which the mortgage was executed, this court may, and

so the authorities seem to require, regard the debt now due from Finch as existing at the date of the mortgage. (4 *John. Ch. Rep.* 371, 373. 5 *Paige,* 10.) The notes, to the amount of $8000, were renewals of similar ones held when the mortgage was executed. And upon the most rigid rule they are secured by the mortgage. The drafts on Carey are substantially continuations of liabilities, against Finch, existing at the date of the mortgage. (15 *John. Rep.* 567, 568. 9 *Mass. Rep.* 247.)

The proof showing that the notes and bills were discounted on the security of the mortgage, was proper, and perhaps necessary. (7 *Peters,* 119.) The recent decision of the court for the correction of errors, that parol proof is not admissible, at law, to show a deed to be a mortgage, has no application.

THE CHANCELLOR. The appellants having purchased the equity of redemption from the assignees after the bill had been taken as confessed against the latter, would have been precluded from setting up any defence which was inconsistent with the admission thus made, by their grantors, of the facts charged in the bill, had not the complainants, by amending their bill, waived their order taking the bill as confessed against the assignees of Finch. But upon the merits of the case, the decision of the vice chancellor was technically correct.

Where a bond and mortgage are actually given to secure a particular debt mentioned therein, the mortgagee cannot, as against subsequent purchasers or incumbrancers, hold it as a lien for an entirely distinct and different debt, upon parol proof that it was intended to cover that debt also. But where the mortgage is given to secure a particular debt, with a condition to be void upon the payment of that debt, the mortgagee does not lose his security by the mere extension of the time of payment, although that extension is in the form of a renewal of the note which is held as a collateral security for the payment of the same debt; where it was not the intention of either party to discharge the mortgage security. (*Heard* v. *Evans & Isham,* 1 *Freem. Ch. Rep. Miss.* 79.) And in this case there

The Bank of Utica *v.* Finch.

was no defeasance of the conveyance, upon the payment of any particular debt, which could technically operate as a discharge of the mortgage lien by a change of the collateral security referred to in the mortgage. There was in fact no such sum as $30,000 for money paid, as was mentioned in the mortgage. The mortgage, it is true, was given for the nominal sum of $30,000, but in fact to secure the floating balances, or amount of the notes and bills, which the bank might hold from time to time against the mortgagor.

There are numerous cases in our own courts showing that a mortgage, or a judgment, may be given to secure future advances ; or as a general security for balances which may be due, from time to time, from the mortgagor or judgment debtor. And this security may be taken in the form of a mortgage or judgment for a specific sum of money, sufficiently large to cover the amount of the floating debt intended to be secured thereby. The same principle was recognized and acted upon by the supreme court of the United States in the case of *Shirras and others* v. *Cray & Mitchell*, (7 *Cranch*, 50,) cited by the respondent's counsel on the argument. Here there was not in fact any debt of $30,000, for moneys advanced to Finch and wife, which was due and payable as mentioned in the mortgage. There is a large sum due, however, for notes and securities which were then running to the bank, and for other securities subsequently given ; all of which securities, or so much as should become due and be payable thereon at the final close of the business of renewing and discounting notes and securities, or advancing moneys by the bank, not exceeding the $30,000, were intended to be secured by this mortgage.

The decree appealed from, therefore, was not erroneous, and it must be affirmed with costs. And as the appeal has prevented the respondents from obtaining the master's report, and the final decree, for a long time, during which time the appellants have been entitled to the possession of the mortgaged premises, and to the enjoyment of the rents and profits thereof, if, upon the foreclosure and sale of the premises under the decree which may be entered in this suit, it should turn out that the proceeds

of the mortgaged premises are insufficient to pay the amount due to the complainants, with interest and costs, the appellants must pay to the respondents the rents and profits of the mortgaged premises during the time for which the proceedings have been stayed by this appeal, or so much of such rents and profits as may be necessary to pay such deficiency; as the damages of the respondents for the delay and vexation which they have sustained by this appeal. And a reference is to be hereafter directed to ascertain the amount of such rents and profits, if it shall be necessary to do so to carry this part of the decree of affirmance into effect.

The master designated in the decree to compute the amount due upon the mortgage, having died since the decree, it may be referred to any other master to ascertain and report the amount. In case the reference shall not have been executed before the first of July next, the complainants are to be at liberty to apply to any justice of the supreme court, either at chambers or at a special term, to designate a referee to execute the reference.