TRUSCOTT and others *vs.* KING.

A judgment or mortgage may be taken to cover future liabilities and advances.

The person taking such security will be protected, whether the arrangement appears on the face of the papers, or rests in parol.

A judgment may be confessed to R. S. W. to cover future advances to be made by R. S. W. & Co.

Where a subsequent mortgage creditor files a bill to set aside such judgment, and alledges that it was confessed to secure R. S. W. for future advances made by him, and the answer does not alledge that any other person than R. S. W. was interested in such security, the plaintiff can not avail himself of the variance.

A record of a mortgage under the recording act of New-York is notice to a subsequent purchaser, but does not affect a prior purchaser or incumbrancer. The act is prospective, not retrospective, in its operation.

A judgment to cover future advances was docketed 14th of October, 1835, a mortgage to another creditor was recorded 16th of October, 1837, after which date most of the unpaid advances by the judgment creditor were made. *Held* that the recording of the mortgage was not constructive notice to the prior *judgment creditor*: and *held also* that such judgment creditor was to be protected in his advances made after the recording of the mortgage and before he had actual notice of such mortgage.

IN EQUITY.　This was an appeal from a decree made in the late court of chancery by the vice chancellor of the 8th circuit. On the 22d of April, 1835, Russell S. Brown and Rodman Starkweather confessed a judgment in the supreme court of this state to Richard S. Williams, on a bond and warrant of attorney, for forty thousand dollars of debt, and $18,79 costs, which judgment was entered and docketed on the 14th of October, 1835. This judgment was given to secure an indebtedness then existing to, and advances thereafter to be made by, the firm of Richard S. Williams & Co. On the 15th of September, 1837, Russell S. Brown executed to George Truscott and John C. Green a bond conditioned to pay $50,000. And to secure the same said Brown and Rodman Starkweather and wife executed to Truscott and Green a mortgage on real estate in the city of Buffalo. The mortgage was recorded on the 16th of October, 1837. This mortgage was assigned to Janet Stretch,

Truscott *v.* King.

and was foreclosed by bill in chancery. Pending the foreclosure suit Brown died, leaving a will, by which he devised his property to Starkweather. The suit was revived, and a decree for sale made on the 9th of December, 1845. After the death of Brown, Williams revived his judgment, by *scire facias*, on the 1st of January, 1845. He afterwards assigned said judgment to King, the defendant, who issued an execution thereon, and sold the premises in question, (being the same real estate covered by the mortgage,) on the 4th of August, 1845, which were bid in by the defendant King. Neither Williams nor King were made parties to the foreclosure suit. It was proved that at all times after the giving of the judgment there was due to Richard S. Williams & Co. over $20,000 for advances made to Brown & Starkweather. That on the 20th of February, 1839, on a settlement between Williams & Co. and Brown & Starkweather, there was found due to the former $22,742,26, and that there was over $30,000 due on the judgment when it was assigned to King. Most if not all the indebtedness due upon the judgment, at the time of the assignment, accrued for advances made after the 16th of October, 1837.

The plaintiffs prayed that their mortgage might be declared a prior lien; that the judgment might be adjudged void as against the claim of the plaintiffs; and that the defendant might be perpetually enjoined, &c. &c.

The cause was heard on pleadings and proofs before the vice chancellor, who made a decree dismissing the bill with costs; from which decree the plaintiff appealed.

*A. Taber*, for the appellants.

*M. T. Reynolds*, for the respondent.

*By the Court*, PARKER, J. The law is now well settled that a judgment or mortgage may be taken to cover future liabilities and advances. (5 *John. Ch. Rep.* 326.  6 *Id.* 281, 288.  5 *Cowen*, 441.  16 *John.* 165.  3 *Paige*, 614.  1 *Sandf. Ch. Rep.* 44.  1 *Pet.* 386.  1 *Pick.* 398.  10 *Id.* 199.  24 *Id.* 270.

6 *Watts*, 57.   1 *Id.* 135.   1 *Pet.* 448.   4 *Kent's Com.* 175.) It appears as well by the pleadings as by the proofs, that the judgment confessed by Brown & Starkweather to Williams was given to secure an indebtedness then existing, and also advances thereafter to be made.   Whether this arrangement between the parties appeared on the face of the papers, or rested in parol, is not material.   No objection was made to the evidence ; and if made, it would not have been tenable.   (*Shirras* v *Cray*, 7 *Cranch*, 34.   *Bank of Utica* v. *Finch*, 3 *Barb. Ch. Rep.* 303.) Nor does it invalidate the claim of the judgment that it was confessed to R. S. Williams for the benefit of R. S. Williams & Co.   Such a practice is also permissible.   (24 *Pick.* 270.)

But it is said that we must disregard the evidence that the judgment covered the liabilities of Williams and his partner, because no such fact was alledged, or put in issue.   The bill alledged that the judgment was to cover future advances made by Williams, and the answer claimed that it covered future and existing advances.   Neither party to this suit seems to have been aware that the partner of Williams had any interest in such advances, or in the security taken.   No objection, however, was made to proving the consideration of the judgment, on this ground.   I do not think this objection ought now to be sustained.   Substantial justice between the parties will best be administered by disregarding it.   The plaintiff has not been surprised ; and if necessary, an amendment of the answer might now be allowed, so as to make the proof taken unobjectionable. But I think this is unnecessary ; especially as the first allegation, now claimed to be erroneous, was made by the plaintiff. Besides, it is strictly true, as the parties agree in their pleadings, that the judgment was for the benefit of Williams.   And it does not at all affect the real question in litigation that another person was also interested.

This brings me to the consideration of the principal question in this cause.   The judgment was docketed October 14, 1835. The plaintiffs' mortgage was recorded October 16, 1837, after which date most, if not all, of the unpaid advances were made.

Truscott *v.* King.

Neither Williams nor King had any notice of the mortgage, unless the recording of the mortgage was constructive notice.

The recording act declares that every conveyance, not recorded, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, whose conveyance shall be first duly recorded. (2 *R. S. 3d ed.* 40.) The record is constructive notice to a subsequent purchaser, but it in nowise affects a prior purchaser or incumbrancer. It is prospective, not retrospective, in its operation. (1 *Sandf. Ch. Rep.* 419. 3 *Id.* 193. *Stuyvesant* v. *Hall,* 3 *Barb. Ch. Rep.* 151.) A different doctrine had been supposed to be recognized by the chancellor in *Guion* v. *Knapp,* (6 *Paige,* 42,) but the erroneous impression derived from that case was fully and distinctly corrected by the chancellor in the recent case of *Stuyvesant* v. *Hall,* above cited.

I think it is therefore clear that the recording of the plaintiffs' mortgage was no notice to the previous judgment creditors. We are consequently to consider this case as if the mortgage had not been recorded. The advances, then, of the amount due on the judgment were made after the execution of the mortgage, but in entire ignorance of it. There was no notice either actual or constructive. Is the judgment creditor, in such case, to be protected in preference to the mortgagee? The plaintiff relies on cases which it is necessary to examine. In *Brinckerhoff* v. *Marvin,* (5 *John. Ch. Rep.* 327,) Chancellor Kent cited *Livingston* v. *McInlay,* (16 *John.* 165,) to show that a judgment, as well as a mortgage, may be held as security for future advances, and then added, "The limitation to this doctrine, I should think, would be that when a subsequent judgment or mortgage intervened, further advances, *after that period,* could not be covered." In supposed accordance with this dictum the counsel for the plaintiff contends that the mortgage was an intervening right, taking preference of the advances subsequently made on the judgment without notice to the judgment creditor. I do not think, however, it was intended by Chancellor Kent to lay down any such rule; nor did the case before him call for the decision of such a question. There is certainly no reason

for making a distinction in this respect between a judgment and a mortgage, given to cover future advances. And the chancellor had immediately before, in the same opinion, cited with approbation two cases which show that notice was necessary, to give a second intervening mortgage a preference over a prior mortgage given to secure future advances. The first was *Gordon* v. *Graham*, (*cited in* 7 *Vin.* 52, *E. pl.* 3 ; *S. C.* 2 *Eq. Cas. Ab.* 598,) in which Lord Cowper held that if a clause be contained in a mortgage making it a security for future loans, subsequent loans will be taken as part of the original transaction, and paid before a second mortgage intervening with notice of the clause. The other case was that of *Shirras* v. *Cray*, (7 *Cranch*, 34,) where Ch. J. Marshall held that a mortgage given to secure future advances was a protection for all advances made prior to the receipt of actual notice of the subsequent title of the defendant. Chancellor Kent could not have intended to say, and did not say, that an intervening right was complete without notice. The same remark is applicable to what was said by the same distinguished jurist in *James* v. *Johnson*, (6 *John. Ch. Rep.* 429.) Nor did the question whether notice was necessary to make perfect an intervening right arise in the other cases relied on by the plaintiff's counsel, (1 *Sandf. Ch. Rep.* 45 ; *Id.* 314,) where the dictum of Chancellor Kent is repeated. In none of these cases has the question here presented arisen.

In *Gordon* v. *Graham* the law was carried, in favor of a prior incumbrancer for future advances, much further than the defendant claims here. There A. mortgaged his estates to B., to secure a sum of money already lent to A., and also all such other sums as should thereafter be lent or advanced to him. A. then made a second mortgage to C. for a certain sum, with notice of the first mortgage ; and then the first mortgagee, having notice of the second mortgage, lent a further sum. Lord Cowper decreed that the second mortgagee should not redeem the first mortgage without paying as well the money lent after, as that lent before, the second mortgage was made ; saying "it was the folly of the second mortgagee with notice, to take such security." It seems to me, however, that this decision goes to a

Truscott *v.* King.

questionable extent, and that the prior mortgagee ought not to be protected in making further advances after notice of the second incumbrance. The rule *qui prior est tempore potior est jure* is supposed to forbid such preference. (*See Powell on Mort.* 534, *note E. Boston ed. of* 1828.)

Even in England, where a mortgage gives a legal estate, and the doctrine of tacking obtains, the first mortgagee who lends money after the second mortgage made, and takes a judgment as security, is allowed to tack such judgment to his mortgage and protect himself against the second mortgagee only when the money was lent without notice of such second mortgage. (*Powell on Mort.* 525, 527, 557.)

But I think the law correctly laid down in *Shirras* v. *Cray,* cited above. I do not find that the authority of that case has been questioned, and it seems to me conclusive upon the point under examination. There can be no good reason for a different rule. The second incumbrancer has full knowledge of the terms and conditions of the prior incumbrance. The prior incumbrancer is ignorant of the second incumbrance. It is in the power of the second incumbrancer to give his lien a preference over future advances, by giving actual notice, and he should be required to do so ; for without actual notice it is not in the power of the prior judgment or mortgage creditor to protect himself against loss. Unless actual notice is required, in such cases, neither a judgment nor a mortgage is of any value as security for future advances.

I think the vice chancellor was right in dismissing the bill with costs ; and the decree must be affirmed with costs.