YOUNGS and others *vs.* WILSON and others.

A subsequent incumbrancer who looks at the record is entitled to all the information which the parties to a mortgage can reasonably impart. He is entitled to know the real extent or amount of the debt which the mortgage is given to secure.

A mortgage given to save harmless and indemnify the mortgagees, and each of them, of and from all liabilities which they or either of them had at any time theretofore contracted to and for the mortgagor, " either as surety, indorser, guarantor or otherwise, whether now due or yet to grow due, and from all damages, costs and charges on account of the same," is fraudulent and void as against creditors, for its vagueness and uncertainty in respect to the debt or debts it is intended to secure.

APPEAL from a judgment entered at a special term, upon the report of a referee. The action was brought to foreclose a mortgage given by M. W. Eastman to George Youngs and Abel Hunt, on the 4th of June, 1849. The mortgage expressed a consideration of $2400, and contained the following condition : " Provided always, and these presents are upon the express condition, that if the said Moses W. Eastman, his heirs, executors or administrators, shall well and truly pay and save harmless and indemnify the said George Youngs and Abel Hunt, and each of them, of and from all liabilities which they or either of them may have at any time heretofore contracted to and for the said Moses W. Eastman, either as surety, indorser, guarantor or otherwise, whether now due or yet to grow due, and shall save harmless the said George Youngs and Abel Hunt, and each of them, of and from all damages, costs and charges on account of the same," &c. The referee before whom the cause was tried found that the plaintiff George Youngs had paid, as surety for the defendant Eastman, debts and liabilities intended to be secured by the bond and mortgage set forth in the complaint amounting to $775.55, which amount was due to him in his own right, with interest ; and that the plaintiffs George Youngs and Abel B. Hunt, as executors of Abel Hunt deceased, were entitled to recover for liabilities incurred by Abel Hunt in his lifetime, and for which they were liable as executors, the sum of $314.99 with interest ; which liabilities were secured by the said bond and mortgage. And a judgment was entered, for

the foreclosure of the mortgage, and directing the mortgaged premises to be sold, for the payment of the amount so adjudged to be due to the plaintiffs, with costs. From this judgment the defendants appealed.

*D. B. Prosser*, for the appellants.

*B. Franklin*, for the respondents.

*By the Court*, E. DARWIN SMITH, J. The questions of law and fact in this cause raised and passed upon at special term, I think were rightly decided. Upon the assumption on which the case was there tried I can see no error in the decision or in the decree then made. But a new point is now here raised for the first time in the progress of the cause; to wit, that the mortgage is fraudulent and void as against creditors, for uncertainty in respect to the debt or debts it was intended to secure. The mortgage was given to save harmless and indemnify the mortgagees and each of them of and from all liabilities which they or either of them had at any time theretofore contracted to and for the said Moses W. Eastman, "either as surety, indorsee, guarantor or otherwise, whether now due or yet to grow due, and from all damages, costs and charges on account of the same." The condition is the same in both the bond and mortgage. The mortgage is a security for existing debts then contracted, not for future advances or for liabilities thereafter to be incurred. The question is whether a mortgage given with a condition thus general and vague is valid under the registry act, as against subsequent creditors. It is the policy and object of the registry acts to make the records show the actual state of the title to real estate, with the incumbrances thereon, that subsequent grantees or incumbrancers may be able to ascertain *with certainty*, in respect to mortgages, the extent of the liens or incumbrances thereon. (7 *John. Ch. Rep.* 16.)

"It is necessary," says Chancellor Kent, (4 *Cowen*, 176,) "that the agreement as contained in the record of the lien should give all the requisite information as to the *extent* and

*certainty* of the contract, so that a junior creditor may, by in-
spection of the record and by common prudence and ordinary dili-
gence, ascertain the extent of the incumbrance." This passage
has relation chiefly to the case of a mortgage given as security
for future advances. In such cases the condition of the mort-
gage must necessarily be more indefinite than when it is given
for a certain and ascertained debt. It was held by the chancel-
lor, in *The Bank of Utica* v. *Finch,* (3 *Barb. Ch. Rep.* 293,)
that a mortgage or judgment given to secure future advances or
a floating debt should be taken for a specified sum of money
sufficiently large to cover the amount, and that in that form the
mortgage or judgment would be valid to the extent of the amount
specified therein. (*See also* 7 *Cranch,* 50; 2 *Selden,* 100;
*Truscott* v. *King,* 6 *Barb. Rep.* 346; 16 *John.* 165.) This
vagueness or uncertainty in regard to the real amount for which
a judgment or mortgage is actually held as security in such
cases is unavoidable. It necessarily results from allowing secu-
rities to be given for contingent liabilities, uncertain balances
of debt and for future advances, which is a species of security
clearly allowable. (3 *Cranch,* 61.) But these qualifications
and doubtful suggestions all apply to cases where uncertainty
is incident to the very nature of the transaction, and imply that
where there is no occasion for such uncertainty, in the condition
of a mortgage, it is not to be allowed. The subsequent incum-
brancer who looks to the record is entitled to all the information
which the parties to a mortgage can reasonably impart. He is
entitled to know the real extent or amount of the debt which
the mortgage is given to secure. That is notice to him. (1 *John.
Ch. R.* 298. 2 *John. R.* 506.) This point has been expressly
settled in several cases in Connecticut. In *Hart* v. *Chalker,*
(4 *Conn. R.* 79,) Chief Justice Williams states the rule as fol-
lows : " If a mortgage is given to secure an ascertained debt, the
amount of that debt ought to be stated ; and if it is intended to
secure a debt not ascertained, such *data* must be given respect-
ing the debt as will put one interested in the inquiry upon the
track leading to a discovery ; and if given to secure an *existing*
or *future liability,* the foundation of such liability must be set

Youngs *v.* Wilson.

forth." In 6 *Conn. Rep.* 40, the expression in the condition of a mortgage, that it was to be security "for any and all other notes hereafter indorsed" was held to be altogether too indefinite. In *North* v. *Belden*, (13 *Conn. R.* 380,) it is said that one principle seems to be definitely settled, that the real nature of the transaction, so far *as it can be disclosed*, must appear upon the record. (5 *Conn. R.* 442. 8 *id.* 221.) Applying the test of these decisions to the present case, this mortgage cannot be upheld. When it was given, the debts or liabilities for which it was given were ascertained and were known. They could have been stated in the condition of the mortgage. If the liabilities were contingent, the foundation of such liabilities could have been set forth. If such a loose condition in a mortgage can be sustained, as was said by Chief Justice Williams in *Hart* v. *Chalker*, (*supra*,) it must be sufficient to say "This mortgage is given to secure a debt due." It is apparent that if mortgages with such loose construction can be supported they may be made a most fruitful contrivance to practice and cover fraud. No certain debt is secured by this mortgage, and room is left open for the getting up of new debts and claims, and the substitution of one debt for another, fictitious or real. I think the judgment in this case should be reversed and the complaint dismissed; but as the point on which we reverse the judgment might have been taken by demurrer, or in an earlier stage of the cause, and the costs are in our discretion, I think neither party should recover costs as against the other. Judgment reversed and complaint dismissed, without costs to either party.

[CAYUGA GENERAL TERM, June 1, 1857. *Johnson, T. R. Strong* and *Smith*, Justices.]