CRANE *against* DEMING and others.

Where it appeared from a bill in chancery, that a party defendant had had an interest in the subject matter ; and it did not appear clearly, that he had parted with all that interest ; an exception to his being made a party, taken under a general demurrer to the bill, was held not to be sustainable.

But if it does not appear from the bill, that a party defendant has, or ever had, an interest ; such want of interest may be taken advantage of, on a general demurrer.

If a bill against husband and wife shew an interest in the husband, but none in the wife, and both join in a general demurrer, it will be sustained as to her.

To support an objection, that other persons should have been made plaintiffs

*Margin:* State *v.* Doud.

*Litchfield,*
June, 1829.

Crane
*v.*
Deming.

in the bill, it is necessary, that this be clearly shewn by the bill, or the defendant must aver it.

Therefore, where it appeared from a bill of foreclosure, that the mortgage was given to the plaintiff, acting in behalf of a turnpike company, but it did not appear who composed the company, whether it was incorporated, or what were its powers; the nonjoinder of such company was held not to be a ground of demurrer.

Where the condition of a mortgage deed, executed by *B.* to *A.*, was, "that if *B.* shall pay to *A.* the sums of money that may be hereafter advanced by *A.* to *B.*, in pursuance of an agreement mentioned in the condition of a certain bond given by *B.* to *A.*, bearing even date herewith, on demand, with interest; and if *B.* shall stand to and perform every other agreement and condition on his part to be kept and performed in the condition of said bond mentioned, and build the bridge therein mentioned, and do all other things therein contained, according to the true intent and meaning of said bond and the condition thereof, without any deduction or defalcation; then said deed and obligation shall be null and void:" it was held, on a bill of foreclosure, brought by the mortgagee against the mortgagor and subsequent incumbrancers, that such mortgage was a valid security, containing in itself reasonable notice of the plaintiff's incumbrances, to be ascertained, by the exercise of ordinary discretion and diligence.

In such case, it is no objection to the validity of the mortgage, that advancements were made after subsequent mortgages.

THIS was a bill in chancery, stating the following case. On the 22d of *April* 1822, *Joel Deming*, one of the defendants, and *Israel Crane*, the plaintiff, entered into a covenant, by which it was agreed, by the former, that he and one *John Bragg* should build a bridge over the *Passaic* river, on the turnpike road, and complete it, by the 1st of *July* following; and by the latter, that he should furnish the timber for the bridge, and to pay the sum of 800 dollars, of which 100 dollars was to be paid on the completion of the bridge, and the residue in three months thereafter. After it was erected, it gave way and fell; in consequence of which, it was not finished by the time limited for that purpose. On the 26th of *October*, 1822, *Crane*, at the request of *Deming*, agreed to give him until the 1st of *June* 1823, to rebuild and complete the bridge, and to make him such pecuniary advances as might be necessary to enable him to go forward in the work, provided he would give *Crane* sufficient security, as well for the completion of the bridge within the time last specified, as for the repayment of the money that might be advanced. Such security *Deming* agreed to give; and accordingly executed a bond to *Crane*, in the sum of 3000 dollars, to which the following condition was annexed: That if the said *Joel Deming* should cause to be

builded and completed the last-mentioned bridge, over the *Litchfield,*
*Passaic* river, at the place designated for that purpose, on or ___ June, 1829.
before the 1st of *June* 1823, and should also well and truly
repay to said *Crane,* when requested, all such sums of money
as he, said *Crane,* might advance, for the purpose aforesaid,
with interest thereon ; and should also pay and satisfy said
*Crane* all such losses and damages as the turnpike company, in
whose behalf said *Crane* acted, had sustained, by reason of the
aforesaid failure of said *Deming* and *Bragg ;* and also all loss
sustained by said *Crane,* or by said company, by reason of any
waste or destruction of timber, or other neglect or misman-
agement of said *Deming* or *Bragg,* or either of their workmen,
agents or servants ; and also all such damages as they might
sustain, in case said *Deming* should fail to erect the bridge
within the time last limited ; then the bond was to be void,
otherwise to remain in full force. Afterwards, on the same
day, *Deming* executed and delivered to *Crane* a deed of a
tract of land in *Salisbury ;* to which deed was annexed the
following condition : " That if the said *Joel Deming,* his
heirs, &c. do and shall well and truly pay, or cause to be paid,
to the said *Israel Crane,* or to his certain attorney, &c. the
sum or sums of money that may be hereafter advanced, by the
said *Israel Crane* to the said *Joel Deming,* in pursuance of an
agreement mentioned and referred to in the condition of a
certain bond given by the said *Joel Deming* to the said *Israel
Crane,* bearing even date herewith, on demand, with interest
for the same ; and if the said *Joel Deming* shall stand to,
perform and fulfil every other agreement and condition, on his
part to be kept and performed, in the condition of said bond
mentioned, and build the bridge therein mentioned, and do all
other things therein contained, according to the true intent and
meaning of the said bond, and the condition thereof, without
any deduction or defalcation for taxes, assessments or any oth-
er impositions whatever ; then and from thenceforth said deed
and obligation to be null and void."

*Deming* failed to fulfil the conditions of the bond and the
deed. *Crane,* at sundry times between the 26th of *October*
1822, and the 10th of *September* 1823, advanced to *Deming,*
at his request, to enable him to go forward with the work of
rebuilding the bridge, the sum of 1355 dollars ; and *Crane* and
the turnpike company sustained loss, also, by reason of waste
and destruction of timber, to the amount of 410 dollars ; of

*Crane*
*v.*
*Deming.*

*Litchfield,*
*June,* 1829.

Crane
*v.*
Deming.

which *Deming* had due notice. No part of either of these sums has been repaid.

Previous to the execution of the mortgage deed to *Crane,* viz. on the 15th of *February* 1817, *Deming* had executed to one *Henry Fitch* a mortgage deed of a part of the premises, to secure the payment of a promissory note for the sum of 810 dollars, upon which a judgment was rendered, by the superior court, in *August,* 1818, in favour of *Fitch* against *Deming,* for damages and costs. This debt, in *September* 1825, *Fitch* assigned to *Elisha Sterling,* Esq., who is still the owner thereof.

On the 13th of *February,* 1823, and the 21st *September,* 1825, *Joel Deming* and *Sally Deming,* his wife, executed two other mortgage deeds of the premises to said *Sterling,* to secure the payment of the debt and judgment which *Fitch* had assigned to him, and of two notes, one for 1000 dollars, the other for 200 dollars. Afterwards, *viz.* on said 21st of *September,* 1825, *Joel Deming* and wife conveyed the premises to *Buell Deming,* subject to these incumbrances. All the deeds before mentioned were duly recorded.

The premises were averred to be of the value of 5000 dollars.

The bill sought to redeem the premises as against *Sterling,* upon payment of such sum as should be found due to him on the *Fitch* debt, and to foreclose the equity of redemption in *Joel Deming* and his wife, as mortgagors, in *Sterling* as subsequent mortgagee, and in *Buell Deming,* as subsequent grantee.

*Joel Deming* and *Sally,* his wife, *Elisha Sterling* and *Buell Deming,* were made party defendants.

*Joel Deming* and wife demurred generally to the bill; and the other defendants, having prayed oyer of the condition of the deed referred to in the bill, recited it, and demurred also.

The superior court reserved the case for the consideration and advice of this Court.

*A. Sterling,* in support of the demurrers, contended, 1. That *Joel Deming* and wife had no interest in the subject matter of the bill; they having sold out all their equity of redemption in the mortgaged premises; and therefore, they ought not to have been made parties. It does not appear, indeed, that *she* ever had any interest. She could have none, unless the land was hers; but this is no where averred. At any rate, both have

assigned all the interest that they had.  *Broome* v. *Beers,* 6 *Conn. Rep.* 198. *Swift* v. *Edson* & al. 5 *Conn. Rep.* 531. 2 *Swift's Dig.* 221.

2. That the plaintiff's debt was not so described in his mortgage deed as to give reasonable notice to creditors and subsequent purchasers of the incumbrance.  *Pettibone* v. *Griswold* & al. 4 *Conn. Rep.* 158. *Shepard* v. *Shepard* & al. 6 *Conn. Rep.* 37.   The money part of the mortgage debt, is not a specific sum due, or certainly to become due, but such sum or sums of money as should be thereafter advanced by *Crane* to *Deming.*   The residue of the mortgagee's claim rests in equal uncertainty.   It is, that the mortgagor shall stand to and perform every other agreement and condition on his part to be kept and performed, in the condition of a bond referred to mentioned, and build the bridge therein mentioned.   What the bond and the conditions of it, are, the mortgage does not shew.   But suppose you find the bond ; can you ascertain from it the amount of the incumbrance ?  No money had been advanced ; and the bond discloses no obligation to advance any.  If any has been advanced, the bond is silent as to the amount.  The other part of the condition is dangerously indefinite.   No creditor or subsequent purchaser, by looking at the bond, can ascertain the amount of the incumbrance, or know that any exists.  *Dey* v. *Dunham,* 2 *Johns. Chan. Rep.* 190. *Frost* & al. v. *Beekman,* 1 *Johns. Chan. Rep.* 288. 299.   By collusion between *Crane* and *Deming,* which might be easily pactised without detection, every creditor might be defeated.

3. That aside from the indefiniteness of the mortgage, the plaintiff's claim ought to be postponed to *Sterling's ;* because *Sterling's* mortgage was recorded before the plaintiff made any advancements to *Deming.*   The advancements made, therefore, were made with *notice* of *Sterling's* lien.   *Pow. Mort.* 536, 7. *Cason* & al. v. *Round* & al. *Prec. Chan.* 226. *Peters* v. *Goodrich,* 3 *Conn. Rep.* 152. *Frost* & al. v. *Beekman,* 1 *Johns. Chan. Rep.* 288. 298.

*S. Church* and *L. Church,* for the plaintiff, contended, 1. That it is not a ground of defence, but matter in abatement only, (*i. e.* of special demurrer in the nature of a plea in abatement,) that too many persons are made parties to the bill.

2. That *Joel Deming* has an interest in the subject of this suit, being directly interested in having the account properly

*Litchfield,*
June, 1829.

Crane
*v.*
Deming.

taken.   If he is made a party to the suit, he will be bound by the decree.   As his wife has joined with him in the demurrer, if it is not sustained as to him, it will be overruled as to her also. 1 *Harr. Chan. Prac.* 294.

3. That the demurrers are not well taken, being general, and not expressing the cause of demurrer.   2 *Madd.* 226. *Nash* v. *Smith* & al. 6 *Conn. Rep.* 421. 428.   The demurrers are taken to the whole bill ; and if there be any part of the bill requiring an answer, the demurrers are bad *in toto,* and will be overruled.   2 *Madd.* 226.   The defendants should have answered that part of the bill, which charges the failure to build the bridge ; as this is, unquestionably, set forth in the condition with sufficient certainty.   If the defendants meant to insist, that the plaintiff ought to be postponed to them, they should have answered, stating the facts on which their superior equity is founded.

4. That the mortgage to the plaintiff, is, in every respect, a valid security.   If the record gives the power of knowing the subject matter of the mortgage, or points out a certain object, which may be particularly ascertained, by suitable enquiries, it is sufficient.   *Pettibone* v. *Griswold* & al. 4 *Conn. Rep.* 158. *Brinckerhoff* & al. v. *Lansing* & al. 4 *Johns. Chan. Rep.* 65. 75.   In the present case, the subject matter mentioned, is the bond of that date, given by *Deming* to *Crane* regarding the building of a bridge and monies to be advanced, the particulars of which might be known, by suitable enquiries. 2 *Kent's Com.* 454. *The United States* v. *Hooe,* 3 *Cranch,* 73. *Hendricks* v. *Robinson* & al. 2 *Johns. Chan. Rep.* 283. 309. *Lyle* v. *Ducomb,* 5 *Binn.* 585. *Livingston* & al. v. *McInlay,* 16 *Johns. Rep.* 165. 167.   In the cases of *Pettibone* v. *Griswold,* and *Shepard* v. *Shepard,* the claims did not exist when the mortgage was made ; nor was there any subsisting contract, out of which any future obligation or liability could arise. Here the case is otherwise.   There was a subsisting obligation, when the mortgage was executed ; and this is specified in the condition.   *Stoughton* v. *Pasco,* 5 *Conn. Rep.* 421.

*Bacon,* for the defendant, in reply, enforced the exceptions taken by the counsel associated with him, with the additional one, that the turnpike company, in whose behalf the plaintiff contracted, ought to have joined in bringing the bill.

WILLIAMS, J. It was claimed, 1. That *Joel Deming* and wife ought not to have been made parties to the bill ; they having sold and conveyed their interest in the mortgaged premises. When an exception of this kind is taken, the defendant, who has had an interest, ought to come in and disclaim, or it should clearly appear from the bill he has parted with that interest. Now, in this bill, it is not stated, that these defendants have conveyed *all* their interest, or *all* their equity of redemption ; but merely, that they conveyed the premises, subject to the incumbrances. On a general demurrer, therefore, this exception by *Joel Deming*, cannot be sustained.

As it respects Mrs. *Deming*, nothing appears in this bill to show that she ever had any interest in the mortgaged premises ; nothing even to make it probable, except the fact that she had joined with her husband in the deed, by which the property is conveyed. The inducement to this we do not know ; it may have been done, because it was supposed necessary to bar her of dower ; or, it may have been believed she had an interest that did not exist ; but there is no allegation of interest in her. No reason is, therefore, shewn, for making her a party ; and in *Jerome* v. *Jerome*, 5 *Conn. Rep.* 352. 356. it is said, that it is a general rule, that a bill must show some interest in the defendant ; for otherwise, the plaintiff can have no claim against him, and to make him a party is both nugatory and vexatious.

It is said, this cannot be taken advantage of, under a general demurrer. It is admitted, that in *England* the rule of the court is, that every demurrer shall express the causes of demurrer. 1 *Harr. Chan. Prac.* 294. 3 *P. Wms.* 391. But other causes may be insisted upon in the argument ; and even after the demurrer is overruled, it is said to be according to the course of practice, that other causes may be assigned at the bar *ore tenus.* 6 *Johns. Ch. Rep.* 149. It seems, therefore, to be a rule of practice, adopted by the courts in *England*. It is, no doubt, a salutary rule ; but I am not prepared to apply it to a case where the bill lays no foundation for a decree against one of the parties to it.

Again, it is said, as Mrs. *Deming* has joined in a demurrer with her husband, if it is not sustained as to him, it must also be overruled as to her.

No authority is cited in support of the position, except 1 *Harr. Chan. Prac.* 294. There it is said, on a general demur-

rer to the whole bill, if there is any part as to the relief or discovery to which the defendant ought to put in an answer, the demurrer being entire, ought to be overruled ; or, according to Lord *Redesdale,* " *it is generally considered*" that being entire, it must be overruled. This is nothing more, then, that when a party has a good case—but in his bill has intermixed claims not defensible,—though a demurrer to those parts of the bill would be sustained, yet a demurrer to the whole bill would not be.

Here Mrs. *Deming* is a married woman, and must answer with her husband, unless there is an application to the court to permit a separate answer. 2 *Madd.* 218. She is also supposed to be under the direction, if not under the coercion, of her husband. 1 *Salk.* 290. I should, therefore, require a strict rule to be shewn, before I should be willing she should be deprived of the benefit of her defence, because she had joined with her husband in the demurrer.

But the rules of pleading in chancery, are not so precise and strict as at law ; and are more flexible in their modification, and can be more readily made to suit the equity of the case and the policy of the court. *Per* Chancellor *Kent. Brincker-hoff* v. *Brown,* 6 *Johns. Chan. Rep.* 157. As it respects Mrs. *Deming,* therefore, the demurrer is sustained.

An objection was raised, in the closing argument, that other persons should have been made plaintiffs in this bill ; that the plaintiff contracted in behalf of a turnpike company. The deed upon which a foreclosure is sought, is made to the plaintiff only ; the legal title is in him ; and he asks the court to deprive the defendants of any equitable interest they may have, unless they pay the monies due upon the bond to the plaintiff. Who compose the company referred to in the bond,—whether it be a corporation with power to sue, or such as would be recognized by our laws,—we know not. But to support the objection, the bill must clearly show, that there are others who ought to be parties, or the defendant must aver it. To adopt the language of Chancellor *Kent,* in a demurrer for a like cause : "The bill should have been positive on this point, and have left no doubts as to the fact, before the want of a necessary party was made the ground of a demurrer to the bill." 6 *Johns. Chan. Rep.* 158, 9.

2. But it is further claimed, that the condition of the deed is such as to render it inoperative upon subsequent incumbrances, not setting forth with sufficient certainty what the lien created

by it is. This condition of the deed is : That if said *Deming* pay said *Crane* the money that may be hereafter advanced by said *Crane* to said *Deming*, in pursuance of an agreement re- ferred to in the condition of a certain bond or obligation given by said *Deming* to said *Crane*, bearing even date with said deed, on demand, with interest ; if said *Deming* shall perform every condition on his part to be kept and performed in the condition of said bond, and *build the bridge therein*, and do all other things therein contained, all according to the intent of said bond, then the deed shall be void. This gives notice, in terms, that the land is mortgaged to secure a bond of the same date, payable on demand and on interest ; and that the bond has conditions, one of which is, to build a bridge therein named.

In *Brinckerhoff* v. *Lansing*, 4 *Johns. Chan. Rep.* 75. Chan- cellor *Kent* says, that the mortgage itself disclosed the nature of the debt secured by the bond, when it stated, that the bond was taken as *collateral security*.

This condition not only shows, that it was taken as collate- ral security, but that it was taken, specifically, to secure an agreement for *the building of a bridge*.

The penal sum of the bond and the place of building the bridge, are not indeed given. These omissions cannot, surely, nullify this condition ;—for if it was a mere agreement to build this bridge, the fact that the supposed expense did not appear, could have no effect upon the contract; and as giving the amount of the bond would not ascertain this, it cannot be void for want of it. As to the place where the bridge is to be built ; that must be of still less importance, as the creditor must, in any event, resort to the mortgage to ascertain the amount due ; and he might as well object, if a note was paya- ble at bank, that the bank was not specified in the mortgage.

But neither the amount of a penal bond, nor the place of payment, can be necessary, except to identify the bond. But as that is otherwise sufficiently done, in the present case, this objection is not sustained ; and if any part of the condition is good against the subsequent incumbrances, the demurrer must be overruled. But as the case has been fully argued on other points, and as the Court have formed an opinion upon them, it may prevent further litigation to express that opinion at this time.

It was objected, that other conditions of the bond were not sufficiently stated in the deed to entitle the mortgagee to a

*Litchfield,*
June, 1829.

Crane
*v.*
Deming.

decree in his favour upon them ; and that, that part of the condition of the bond itself, which provides for future advancements, is void, as to creditors. And it is claimed, that these objections are supported by the cases of *Pettibone* v. *Griswold* and *Shepard* v. *Shepard.*

As to those decisions, it could never have been contended, that it was necessary to recite in the condition of the mortgage the contract on which it was founded, in the words of it.

The Court say, creditors must have the power of learning from the record *the subject matter* of the mortgage, that these investigations may be guided by something, which will terminate in a certain result, and must be so defined as to prevent the substitution of any thing, which a fraudulent grantee may devise to shield himself from the demands of his creditors. And further it is said, absolute certainty is not to be expected : but there always may and ought to be a *certain object* after which suitable enquiries may be made. 4 *Conn. Rep.* 162.

Again, the Court say, a mortgage may be given to indemnify the surety of another in the office of sheriff or collector, or an administrator on an estate.

" In all these cases, on enquiry, a creditor cannot know from the record, the *precise incumbrance ;* but he has notice of certain *definite facts,* which *point to and guide* him in the necessary investigation on the subject."

A mortgage to secure an unliquidated book debt, or the fidelity of a factor or bailiff, would be good ; and yet there is nothing certain here, but the *subject matter* of the stipulation. *Stoughton* v. *Pasco,* 5 *Conn. Rep.* 449.

In this case, not only the subject matter is given, but the date of the bond, and that it is payable on demand, with interest. A track is, therefore, pointed out, by which an enquirer can ascertain the facts. It is said, however, that the mortgagor lives in *New-Jersey,* at a great distance ; and it is not reasonable, that creditors should be sent that distance for information. But as the amount due on the mortgage can only be ascertained in that way, this does not seem to be a solid objection.

The result of the cases in *Connecticut,* as given by an able commentator, is—" That the deed must contain within itself *reasonable notice* of the incumbrances, to be ascertained, by the exercise of ordinary discretion and diligence." 2 *Kent's Comm.* 454.

This deed is of that character : it refers the enquirer to a

certain object—the bond, in the hands of the mortgagee—which, by ordinary diligence, he can examine ; and which is identified in such a manner as to prevent the substitution of a fictitious security, by a fraudulent debtor.

But it is also objected, that the bond is to secure *future* advancements ; and that advancements were made after subsequent mortgages.

Such contracts, in the absence of fraud, have certainly been supported. In *The United States* v. *Hooe,* 3 *Cranch* 74. a trust deed to secure his surety against his bond, and also for existing and *future* endorsements at bank, was holden good. It seems also recognized in *Shirras* & al. v. *Daig* & al. 7 *Cranch* 35. So, where a penal bond was given to secure notes drawn, *and about to be drawn,* and secured by mortgage,—it was holden good against subsequent incumbrances. *Lyle* v. *Ducomb,* 5 *Binn.* 585. 588. *Brinckerhoff* v. *Lansing,* 4 *Johns. Chan. Rep.* 65. 74. Chancellor *Kent* speaks of it as no new doctrine, and says, that it is a frequent practice to mortgage property to a creditor as security for a debt *to be* contracted, as well as for one already due. *Hendricks* v. *Robinson,* 2 *Johns. Chan. Rep.* 283. 308, 9. In *Atkinson* v. *Maling* & al. 2 *Term Rep.* 462. this point was pressed in the argument ; but the assignment was held good by the court, without hesitation : indeed, this question does not seem to have been of sufficient importance to engage the attention of the court at all. And in *Badlam* v. *Tucker* & al. 1 *Pick.* 389. 398. the court in *Massachusetts,* speaking of a security for future advances and responsibilities, says : " Such a stipulation may have a fraudulent aspect, or may be satisfactorily explained, *according* to the attending circumstances. Where a mortgage is made merely to secure future advances, without any other consideration at the time, it might be void against creditors, as tending to facilitate collusion, and enabling the mortgagor to get credit on his property, without notice that it was encumbered. But if the object of the mortgage be, to *secure an existing* demand, the addition of a claim protecting *future* advances, would not necessarily avoid the mortgage."

But it is supposed, that the cases in our own court vary the doctrine. It is not believed, that such was the intention of the court ; so far from it, that the Chief Justice says : " I shall not express a definite opinion, as the exigencies of the case do not require it : it may be for existing debts, existing liabilities, *and*

*perhaps for debts to be contracted in future.* But the manner in which it may be done, forms an important consideration." *Pettibone* v. *Griswold,* 4 *Conn. Rep.* 161. It was indeed holden, that a deed to secure *any* notes the grantee might endorse in future, and *any* receipts he might hold, was too indefinite. And in *Shepard* v. *Shepard* & al. 6 *Conn. Rep.* 37. it was held, that a similar condition was not good, though the amount was limited.

In neither of these cases, was there *any obligation* upon the part of the grantee to indorse. But by the bond in question, it appears, that for the purpose of enabling the grantor to carry into effect a contract which he had previously made with the grantee, the latter had bound himself to make the necessary advancements ; and this bond and mortgage are given to enable him to do it with safety. It differs entirely, therefore, from those cases. Here the obligation is as fixed as that of a surety ; and is limited by the necessities of *Deming* in repairing the bridge. These circumstances, therefore, entirely repel any fraudulent aspect attending a general stipulation for future advances, and shew that unless there is some inherent vice in every such agreement, this is one which ought to be supported. And although contracts of this kind should be closely watched, that they may not be made a cover to defraud creditors ; yet when every suspicion of this sort is removed, no principle of law or justice requires that they should be declared void. To adopt such a principle would be to interpose unnecessary embarrassments in the ordinary transactions of business, and to encumber the disposition of property by refinements hitherto unknown. As to the advancements made after the subsequent incumbrances, surely if the contract was a fair one, it was the duty of *Crane* to make these advancements, and he could have been compelled to make them ; indeed, in no other way could he get the advantages, which it was the whole object of the contract to secure. And it is widely different from the cases cited, where a prior mortgage has, under the doctrine of tacking, been postponed as to debts created after the knowledge of a subsequent incumbrance.

I am therefore of opinion, that the plaintiff's bill is sufficient, as against all the parties, except against *Sally Deming ;* and that he is entitled to a decree for all the sums which may be found due on the several breaches of said bond ; and that the superior court be so advised.

The other Judges were of the same opinion.

<em>Litchfield,</em><br>June, 1829.

Crane<br><em>v.</em><br>Deming.

Demurrer sustained as to Mrs. *Deming*, and overruled as to the merits of the bill.