CHARLES BOSWELL *vs.* GEORGE GOODWIN AND OTHERS.

Where a mortgage is given to secure future advances or liabilities, and the mortgagee has definitely agreed to make such advances or to assume such liabilities, the mortgage when recorded is a valid and fixed security, not affected by a subsequent mortgage of the same property, though the advances may be made or the liabilities assumed after the record of such later mortgage.

Where, however, it is optional with the mortgagee to make the advances or not, and he has actual notice of a later mortgage upon the same property for an existing debt or liability, such later mortgage will take precedence of the prior one as to all advances made after notice of such later mortgage.

Whether the record of the later mortgage would not be sufficient notice to the prior mortgagee; and whether a mortgage to secure future advances, to be made or not at the option of the mortgagee, should not stand in all respects as if it was executed at the time the advances are in fact made : *Quere.*

And it makes no difference that such later mortgage is given to secure future advances to be made or not at the option of the mortgagee, so long as the advances under it are actually made before the advances under the prior mortgage over which they claim precedence. [Butler, J., dissenting.]

A knowledge of the existence of the later mortgage is enough to affect the prior mortgagee, as to his future advances, even though he be not notified of the advances actually made under the later mortgage.

In a suit for a foreclosure brought by the prior mortgagee, against the mortgagor and subsequent mortgagees, the bill alleged that the petitioner indorsed a note of a certain date and amount for the mortgagor, under the mortgage, but contained no allegation that the note was a renewal of a formal one. Held, that evidence to prove the note to have been given in renewal of a former note was inadmissible.

Where a mortgage has been given to indemnify an accommodation indorser of a note, and the note at maturity is not paid, but renewed, with a renewal of the

indorsement, the security applies to the renewal note in the same manner as to the original one. So long as the renewal note is not paid the indorser is not indemnified for his original indorsement.

BILL for a foreclosure. The case was referred to a committee, by whom the following facts were found.

The mortgage of the petitioner was executed on the 24th day of August, 1855, by George Goodwin and others, constituting the firm of Goodwin & Co., and was given to secure the following bond of that date, executed by them:—

"Know all men by these presents, that we, George Goodwin, of East Hartford, and Charles Goodwin, Henry Goodwin and Edward Goodwin, of Hartford, all of the county of Hartford, are held and firmly bound unto Charles Boswell, of said Hartford, in the penal sum of ten thousand dollars, to be paid to the said Boswell, his heirs, executors or administrators; for which payment we hereby bind ourselves, our heirs, executors and administrators, firmly by these presents. The condition of which obligation is such, that whereas the said Charles Boswell has agreed, from time to time as circumstances may require, to indorse the notes of Goodwin & Co., and notes held by them, should they desire it, to an amount not exceeding at any one time, outstanding, the sum of six thousand dollars, and only during the pleasure of said Boswell; now if said Goodwin & Co. pay or cause to be paid all such notes so indorsed or to be indorsed by said Boswell, and save him harmless therefrom, then this bond to be void, otherwise to continue in full force. In witness whereof, &c."

The mortgage was recorded the same day. In pursuance of the agreement mentioned in the bond, the petitioner from time to time indorsed notes at the request and for the accommodation of Goodwin & Co., not exceeding the amount provided for in the bond, two of which he was afterwards compelled to pay, viz:—one note for $2,700 at three months, dated and indorsed on the 6th of March, 1861, and one for $3,000 at two months, dated and indorsed on the 20th of March, 1861. The note for $2,700 was the last of a series of renewals of a note indorsed by the petitioner for Goodwin & Co. on the 8th day of January, 1858.

Boswell *v.* Goodwin.

On the 23d of January, 1858, Goodwin & Co. executed and delivered a mortgage of the same property to the respondents Seymour and Sage, partners under the name of Seymour & Co. to secure the following bond, executed and delivered at the same time :—

" Know all men by these presents, that we, George Goodwin, Charles Goodwin, Henry Goodwin and Edward Goodwin, co-partners in business under the name and firm of Goodwin & Co., are held and firmly bound unto Melancthon L. Seymour and Warren B. Sage, copartners under the name of Seymour & Co., in the penal sum of twelve thousand dollars, to be paid to them, the said obligees, their heirs, executors and administrators, for which payment, to be well and truly made, we hereby bind ourselves, our heirs, executors and administrators, firmly by these presents. The condition of which obligation is such, that whereas the said Goodwin & Co., paper manufacturers, have heretofore sent and expect hereafter to send paper to said Seymour & Co., commission merchants, for sale, the said Seymour & Co. making advances from time to time on invoices of paper received by them, and whereas it is understood between the parties that said Goodwin & Co. may need, for a longer or shorter period, greater advances than the paper in the hands of said Seymour & Co. may secure and indemnify them for, and said Seymour & Co. are willing to make said advances for said Goodwin & Co., provided that the said advances are never to exceed ten thousand dollars over and above the property in their hands at the time, nor to be made but within five years from the date hereof, and said sums and times to be at the option of said Seymour & Co. Now if we pay to said Seymour & Co. all such amounts as they may advance to us by note or otherwise, and save them harmless from all loss or damage by reason of such advances, then this obligation to be void, otherwise to continue in force. In witness whereof, &c."*

This mortgage was made expressly subject to the mortgage to the petitioner. It was recorded on the 27th of May, 1858.

Under this bond and mortgage Seymour & Co. made ad-

---

* The precise conditions of both mortgages are given in full in the opinion.

vances to Goodwin & Co. from time to time, the amount due to them, upon which account, on the 20th day of March, 1861, was $25,312, no part of which had since been paid.

On the 11th of February, 1859, Seymour & Co. loaned to Goodwin & Co. their notes to the amount of $5,000, and on the same day Goodwin & Co. executed to them as security therefor a mortgage of the same land embraced in the mortgages before described, with certain other real estate not embraced therein, which mortgage was recorded on the 15th of February, 1859. This mortgage was also made subject to that of the petitioner, as to the land covered by the latter. The notes so loaned were not paid at maturity by Goodwin & Co., and Seymour & Co. were compelled to pay them.

The petitioner had heard, prior to the 6th of March, 1861, that Goodwin & Co. had made certain mortgages to Seymour & Co., upon the same property which was mortgaged to him, but did not know for what precise purpose ; and did not know at that time that Goodwin & Co. owed Seymour & Co., or that there had been any advances by Seymour & Co. to Goodwin & Co. under the mortgage of January 23, 1858, and did not know that Seymour & Co. had paid any of the notes loaned by them to Goodwin & Co. and secured by the mortgage of February 11, 1859. Seymour & Co. had never given the petitioner notice of either of their mortgages, otherwise than by placing them on record ; nor did they ever request the petitioner to make no further advances to Goodwin & Co. under his mortgage.

Upon the hearing before the committee the petitioner offered evidence to prove that the note of $2,700, indorsed by him on the 6th of March, 1861, was given in renewal of a former note, and was the last of a series of renewals of a note indorsed by him on the 8th of January, 1858. To this evidence the counsel for the respondents Seymour & Co. objected, but the committee received it, and found the fact upon the evidence. The respondents excepted.

The committee having returned their report to the superior court, the respondents Seymour & Co. remonstrated against its acceptance on the ground of the erroneous admission of

the above evidence, and the court reserved for the advice of this court the question as to the admissibility of the evidence, and as to what decree should be passed upon the facts.

*McFarland*, for the petitioner.

1. The evidence was admissible. The fact was not important except as affected by matter set up by the respondents in their answer. They claimed a priority over the $2,700 note by reason of advances made prior to its indorsement. To show that they were not entitled to this priority we offer evidence to show that the note, though of later date, is yet so connected with notes of an earlier date that the respondents are not entitled to the priority which they claim. We could not have anticipated, and so have adapted our allegations to, this claim of the respondents. The allegation of the time of the indorsement was not material. 1 Chitty Pl., 257. Renewal notes stand on the same ground as original ones. *Bolles* v. *Chauncey*, 8 Conn., 389; *Clark* v. *Pond*, 14 id., 334; *Smith* v. *Prince*, id., 472.

2. Both the notes held by the petitioner are entitled to precedence, in taking the benefit of the security, over the mortgages of Seymour & Co. The petitioner's mortgage was in all respects a valid one, and constituted a first lien upon the premises to the amount of $6,000. *Crane* v. *Deming*, 7 Conn., 387. This mortgage was recorded, giving the respondents constructive, as they also had actual, notice of it. Their mortgages were both made expressly subject to this mortgage. In these circumstances the petitioner had a right, as he had agreed to do, to go on and make the indorsements contemplated by the mortgage and purporting to be secured by it, and could not be affected by the mortgages of Seymour & Co., which were not taken to secure a fixed indebtedness or an existing liability, but only to secure future advances and liabilities, which were to be made and assumed or not at their option. The petitioner had no notice that any advances had been made or liabilities assumed by them under their mortgage, and clearly could not be affected, if at all, without notice of such advances or liabilities. It is not enough that the petitioner

knew of their mortgages. He was not bound to infer from the fact of the mortgages that advances had actually been made under them. Clearly he was not, if Seymour & Co. were not bound to infer from the petitioner's mortgage that he had actually made the indorsements secured by it. They were bound to infer this, because the petitioner's mortgage was a prior one, to which their mortgages were expressly made subject, while their mortgages, later than the petitioner's in time, were also inferior to it in equity. 4 Kent Com., 175; *Hubbard* v. *Savage*, 8 Conn., 215; *Ketchum* v. *Jauncey*, 23 id., 123; *Rowan* v. *Sharps' Rifle Manuf. Co.*, 29 id., 282; *Wilson* v. *Russell*, 13 Maryl., 494, 533; *U. States* v. *Hooe*, 3 Cranch, 73; *Shirras* v. *Caig*, 7 id., 35; *Evans* v. *Bicknell*, 6 Vez., 183; *Wyatt* v. *Barwell*, 19 id., 435; *Gordon* v. *Graham*, 7 Viner Ab., 52, E. § 3; 1 Story Eq. Jur., §§ 421, 422.

*F. Fellowes* and *C. E. Fellowes*, for the respondents.

1. The evidence that one of the notes was a renewal note was clearly inadmissible, since the allegations of the bill lay no foundation for it. The plaintiff simply complains that he indorsed the $2,700 note in question subsequent to the mortgages and advancements of Seymour & Co., and has been obliged to pay the note. But this evidence, if admissible, could make no difference, since it does not prove that there has been any forfeiture or breach of the condition of the mortgage by reason of Goodwin & Co. failing to pay any obligation, debt, or liability, which was in existence at the time when the mortgages to Seymour & Co. became effective. Every note with Boswell's indorsement which was then in existence has been paid at maturity, without the contingent liability of Boswell by reason of his indorsement ever having become absolute. So far as it regards the present question, the renewal notes are to be considered as so many independent notes which Mr. Boswell was under no obligation to indorse, and which he was not compelled to indorse to save him harmless from his prior indorsement.

2. The mortgages held by Seymour & Co. are entitled to priority over the mortgage of the petitioner. The two notes

set forth in the bill and alleged to have been indorsed by the petitioner, the non-payment of which he claims was a breach of the condition of the mortgage entitling him to foreclosure, were made long subsequent to the execution and recording of the mortgages held by Seymour & Co., and long subsequent to the advances made by them upon the faith of their mortgages. In point of fact, therefore, Boswell stands to Seymour & Co. in the relation of a subsequent incumbrancer, and thus, in point of law, Seymour & Co. have the prior equity. That the mortgage to Boswell was executed prior to those of Seymour & Co. is of no importance, since neither the notes nor indorsements above referred to were in existence when Seymour & Co's mortgages were recorded and when they made their advancements, and Boswell was under no obligation whatever to make those indorsements. He could make them or not, at his pleasure. His mortgage was a mere agreement that if he should choose to indorse for the mortgagors thereafter, he should have security under the mortgage—an agreement in no manner affecting the mortgages to Seymour & Co. to secure advances made before the indorsements. To hold otherwise would be, in effect, to tie up the estate forever, exclude the possibility of subsequent mortgages or sale, and to protect it even from attachment, except subject to the contingency of Mr. Boswell's pleasure to put a prior lien upon it by a subsequent indorsement. Boswell had notice of the mortgages to Seymour & Co., and made the indorsements with his eyes open. He had actual notice enough to put him on inquiry. He also had, from the record, constructive notice, which is equivalent to actual notice. *Peters* v. *Goodrich*, 3 Conn., 150, 152; *Stoughton* v. *Pasco*, 5 id., 447; *Sigourney* v. *Munn*, 7 id., 324; *Bolles* v. *Chauncey*, 8 id., 390. The following authorities fully sustain our position with regard to the precedence of the mortgages of Seymour & Co. *Spader* v. *Lawler*, 17 Ohio, 371; *Frye* v. *Bank of Illinois*, 11 Ill., 367; *Brinkerhoff* v. *Marvin*, 5 Johns. Ch., 326; *Craig* v. *Tappin*, 2 Sandf. Ch., 78; 4 Kent Com., 175, note *c*; Greenl. Cruise, tit. 15, Mortgage, ch. 5, sec. 2, note 1; *Ter Hoven* v. *Kerns*, 2 Penn. S. R., 96; *Shaw* v. *Neale*, 4 Jurist, 695;

*Rolt* v. *Hopkinson*, 4 Jurist, 919, 1119; 2 Redf. Story Eq. Jur., § 1023 *a.*

SANFORD, J. The evidence objected to on the hearing before the committee was inadmissible. The bill contained no allegation of the fact which that evidence was introduced to prove; and the respondents, having no notice of the claim, can not be supposed to have come to the trial prepared to meet it. For this error of the committee in receiving improper evidence therefore, as the bill now stands, the respondents, Seymour & Co., are entitled upon their remonstrance to have the report of the committee set aside.

But as the petitioner's bill may be amended, so as to render the evidence objected to admissible, we deem it proper for us to express our opinion upon the merits of the case as presented by the report now before us.

It seems to be settled by a series of adjudications, that mortgages given to secure advancements to be made to the mortgagor or liabilities to be assumed for him by the mortgagee in future, are to be upheld and enforced against subsequent purchasers, mortgagees and attaching creditors, even where the registration of deeds and mortgages is required by law; *Crane* v. *Deming,* 7 Conn., 387; and although it is optional with the mortgagee whether he will make such advancements or assume such liabilities or not, provided they are made or assumed in good faith, and without notice of the subsequent intervening incumbrance. *McDaniels* v. *Calvin*, 16 Verm., 300. *Shirras* v. *Caig*, 7 Cranch, 34. Story, J., in *Conard* v. *Atlantic Ins. Co.*, 1 Peters, 655. *Truscott* v. *King*, 6 Barb., 346.

The petitioner's mortgage was given on the 24th of August, 1855, and was recorded the same day. The condition was of the tenor following:—" Whereas the said Boswell has agreed, from time to time, during his pleasure only, to indorse notes for Goodwin & Co. as they may desire, but so that there shall not be outstanding indorsements at one time exceeding six thousand dollars, and whereas we have given him our joint bond of even date to indemnify and save him harmless from

·all such indorsements ; now if we keep and fulfill the condition of said bond, and save him harmless as aforesaid, then this deed shall be void, otherwise not."

On the 23d of January, 1858, Goodwin & Co. mortgaged the same property to the respondents Seymour and Sage, constituting the firm of Seymour & Co. The condition of the mortgage recited that the mortgagors had given their penal bond to the mortgagees " in the sum of $12,000, providing that if the grantors shall pay all sums that may be advanced to them under the firm of Goodwin & Co., by the grantees composing the firm of Seymour & Co., by note or otherwise, which they are to do for the accommodation of said Goodwin & Co., and save them harmless therefrom, then said bond to be void. And said advances are at no time to exceed $10,000, nor to be made but within five years. Now if we keep and fulfill the condition of said bond, then this deed to be void, otherwise to remain in force." And on the 11th of February, 1859, Goodwin & Co. gave to Seymour & Co. another mortgage of the same, together with other property, the condition of which mortgage recited that the said Seymour & Co. had loaned and advanced to them for their accommodation their promissory notes to the amount of five thousand dollars, (specifying the date and amount of each note, and when, where and to whom payable,) and providing that if Goodwin & Co. should well and truly indemnify and save harmless Seymour & Co. from all loss, costs, damage and harm, by reason of said notes, then the deed should be void, otherwise it should remain in force.

Both of these mortgages to Seymour & Co. were recorded, the first on the 27th of May, 1858, and the last on the 15th of February, 1859, and in both of them the petitioner's mortgage was expressly mentioned.

In pursuance of the agreement between the petitioner and Goodwin & Co., the petitioner from time to time indorsed the notes of Goodwin & Co. for their accommodation, down to the 6th day of March, 1861, and on that day indorsed the note for $2,700 described in the bill, and on the 20th of March, 1861, the note for $3,000 described in the bill. Both of these notes the petitioner has been obliged to pay. The note for

$2,700 was the last of a series of renewals of a note indorsed by him on the 8th of January, 1858.

Upon this state of the facts the note for $2,700 is entitled to precedence before any of the claims of Seymour & Co. under either of their mortgages. The original note was made and indorsed by the petitioner on the 8th of January, 1858, fifteen days before the earliest of the mortgages of Seymour & Co. was made, and several months before it was recorded, and for that indorsement the petitioner has never yet been " indemnified." And as his original liability has thus been continued through all the successive renewals of the paper, his original security also has continued, and he has now a right to resort to it for indemnity, as he might have done if, instead of renewing, he had been compelled to pay the original note at its maturity. *Bolles* v. *Chauncey*, 8 Conn., 389 ; *Pond* v. *Clark*, 14 id., 334 ; *Smith* v. *Prince*, id., 472 ; *Dunham* v. *Day*, 15 Johns., 555.

Of the existence and terms of the petitioner's mortgage Seymour & Co. were in legal presumption apprised by the record. And by the law they were apprised of the protection which that mortgage afforded the petitioner for all indorsements made before the mortgage to them was given, and the extent of that protection. They knew, or at any rate they are chargeable with the knowledge, that the original note was outstanding, and that the petitioner was liable thereon as indorser when they took their mortgages. Or if they did not know these facts, it was because they had omitted to make such inquiries as men of ordinary prudence and sagacity usually make under such circumstances, and intended to assume the risk ; and in either event they ought to abide the consequences of their presumption or neglect.

The $3,000 note stands upon different ground. That was an original note made and indorsed long after both of the mortgages to Seymour & Co. were executed, and after advancements had been made under the first of them, amounting to more than $25,000, and under the second to more than $5,000, both of which sums still remain unpaid. And it is found that the petitioner had notice in fact that some inter-

vening mortgages upon the property mortgaged to him had been given by Goodwin & Co. to Seymour & Co. when this indorsement was made.

The peculiar language of the report on this point has not escaped our notice, but we think the fair import of it is as above expressed, that the petitioner had notice in fact of these intervening mortgages—ample notice of the existence of rights of some kind residing in Seymour & Co., which it was his duty to respect, and which he had no right to disregard. We deem it of no essential importance, as affecting the rights of these parties, that the petitioner did not know for what " precise purpose " these mortgages had been made, and did not know that Seymour & Co. had made any advancements to Goodwin & Co. under the first, or paid any of the notes loaned upon the security of the last. He did know that certain mortgages had been made to Seymour & Co., and, consequently, that Seymour & Co. had acquired some rights in the property mortgaged to him, which rights further advancements or indorsements by him, if allowed to take precedence of their claims, would necessarily affect and might seriously impair. He was informed to whom these mortgages had been given, and he knew that the town records would disclose the true character and extent of the incumbrance created by them, and clearly indicate the source from which exact and certain information could be obtained.

" Whatever," says Mr. Justice Story, " is sufficient to put a party on inquiry, (that is, whatever has reasonable certainty as to time, place, circumstances and persons,) is in equity held to be good notice to bind him." 2 Story Eq. Jur., § 400. Or, in the language of Mr. Sugden, " when a man has sufficient information to lead him to a fact, he shall be deemed conusant of it." 2 Sugden Vend., ch. 23, sec. 1, p. 552.

The petitioner was under no obligation to indorse this note, and in doing it with the knowledge which he had and without inquiry, he disregarded the rights of Seymour & Co. as well as the obvious dictates of ordinary prudence and discretion. His mortgage was indeed on record, but that record, though conclusive evidence of notice to subsequent incumbrancers, was

notice only that the petitioner had an inchoate mortgage, of no binding force upon either of the parties to it until some indorsements by the petitioner should be made, and the only utility of which notice was, to indicate the source of information and put subsequent incumbrancers on inquiry.

When one having actually made or undertaken to make advancements, or assumed or undertaken to assume liabilities for another, has taken a mortgage in proper form for his indemnity, and placed that mortgage upon record, his incumbrance is consummated, and he may safely leave it to its fate. But when without some further act to be done by him the instrument has and can have no effect, and where it is optional with him to do such act or abstain from doing it, why should he not be required, until he does that act, to recognize and regard the intervening rights acquired by others, and be held chargeable with whatever notice of the state of the mortgagor's title the public records may disclose when the act is done? Why should not a mortgage to secure future advancements, to be made or not at the option of the mortgagee, be treated in all respects as if it was executed when the contemplated advancements are made in fact?

But as upon this point there is understood to be some diversity of opinion among the members of the court, we prefer to place our decision upon the ground already indicated, that the petitioner had notice in fact of Seymour & Co's incumbrance upon the property mortgaged to him when he indorsed the $3,000 note; and therefore that his claim for that indorsement ought to be postponed to the claims of Seymour & Co. to the amount of $10,000 and interest thereon under their first mortgage, and to the full amount of the notes loaned by them upon the security of their second mortgage.

We have expressed these opinions in view of the probable amendment of the plaintiff's bill, but our advice to the superior court must of course be predicated upon the record as it stands, and therefore must be that the report be set aside.

In this opinion HINMAN, C. J., and DUTTON, J., concurred. BUTLER, J., dissented.

BUTLER, J. This case is in some respects without precedent.

Mr. Boswell agreed to indorse the notes of Goodwin & Co., should they desire it, from time to time as circumstances should require, to an amount not exceeding six thousand dollars, at his pleasure—that is, so long as he was willing or desired to do so. This was a contract, limited in amount to six thousand dollars, and as to time by the consent of both parties, lawful in itself, and lawfully secured and rendered safe to Boswell by the mortgage in question. Seymour & Co. made a similar subsequent agreement, by which they undertook to advance on the paper sent them to be sold, and in excess of its value, for a longer or shorter period as Goodwin & Co. might need, and at such times and in such sums as Seymour & Co. chose, but not extending beyond five years, or the sum of ten thousand dollars. That was also a lawful contract, limited in amount to ten thousand dollars, and in time by the necessities of Goodwin & Co. or the " option " or "pleasure" of Seymour & Co., and an ultimate period of five years ; and lawfully secured and rendered safe to Seymour & Co. by their first mortgage.

There is no essential difference between these two contracts. The agreement or understanding in both cases is recognized and embodied in the condition of a penal bond, executed by Goodwin & Co. only, on which the mortgage is predicated. The contracts alike contemplate future advances of money or credit, as Goodwin & Co. " may need " or " desire," and at the " pleasure " or " option " of the mortgagees. Neither is absolute, or could be enforced specifically against the parties. Both mortgages were duly recorded. Seymour & Co. had actual and constructive notice of Boswell's mortgage, and Boswell had constructive notice, and perhaps sufficient actual notice to put him on inquiry, that Seymour & Co. held theirs, if it was his duty to inquire ; and Boswell made indorsements after Seymour & Co. had taken their mortgage and made advances on the faith of it.

Now I know of no principle of equity, or any decision, which will authorize a postponement of the advances under the mort-

gage of Boswell to those made under the first mortgage of Seymour & Co. None of the cases read at the bar, or cited on the briefs, are analogous in respect to the facts, or establish any such principle. The contracts and mortgages are alike, and there is nothing to exempt them from the rule of equity that he who is first in time is first in right.

The decision about to be made is an important one. It will unsettle existing impressions respecting the law regarding priority of mortgages, and, in my judgment, make contracts of indemnity for indorsements or advances, unsafe and troublesome ; and I feel constrained to give my reasons at some length, and will state them in the form of propositions embodying the principles which I think we should recognize.

1. If there be a mortgage to secure future advances described with reasonable certainty, and the mortgagee is *bound* by the contract to make them, the equity of a junior incumbrancer will not be permitted to intervene in any case and prevent them, or take precedence of them when subsequently made. This was settled in the case of *Crane* v. *Deming*, 7 Conn., 387, and has not been questioned.

2. If there be a mortgage to secure future advancements, described with reasonable and sufficient certainty, and the mortgagee is *not bound*, but has a *right* by the contract to make them, the equity of a junior incumbrancer for an existing debt, or of an attaching creditor, will intervene and take precedence of any advancements made after actual, or (perhaps) constructive notice of the subsequent lien. This doctrine was placed by the Chief Justice of Ohio, in the case of *Spader* v. *Lawler*, 17 Ohio, 371, and should rest, on the broad and essential principle, that the property of a debtor must be subject, at all times, to appropriation for the security or payment of his debts, and a junior incumbrancer for an existing debt, and an attaching creditor, acquire a lien upon the property *as it then is;* and, as it is not *necessary* to the rights of the prior mortgagee that he should advance further, he can not be permitted to prejudice their rights or destroy their lien, by adding voluntarily to his incumbrance. They have an equity superior to his right to make further advances.

A different ruling was erroneously made very early by Lord Cowper in *Gordon* v. *Graham*, (7 Viner Ab., 52, E. § 3,) and much confusion and contrariety of decision have resulted from it. The case was cited without question in subsequent text-books, and followed in several decisions in this country, which have been cited by the counsel for the petitioner. But it has been questioned, repudiated, or evaded in many others, cited by the respondents' counsel; and directly overruled in England, by the House of Lords, in the recent case of *Rolt* v. *Hopkinson*, 4 Jurist, 919, 1119; and the weight of authority is now clearly in favor of the proposition as stated.

3. But where, as in this case, neither the prior or junior incumbrance is taken for an existing debt, but both are taken for the security of advances to be made, and are in all respects similar in character and purpose, there is nothing to create a superior equity in the junior incumbrancer, and the equitable principle, that he who is first in time is first in right, should be applied; and the prior mortgagee may fulfill his contract without regard to the subsequent mortgage.

There is no decided case in point either way; but I think the law should be so on principle.

The doctrine of some of the cases in which the ruling of Lord Cowper, and the authority of *Gordon* v. *Graham*, have been disregarded, is, that every *new advance* is a *new debt;* and therefore a new advance after the junior incumbrance takes effect, should stand on the same ground as an independent debt subsequently contracted, and not covered by the mortgage, which it is conceded the prior mortgagee can not under such circumstances tack against a subsequent incumbrancer. The doctrine is well enough as applied in the cases cited; for in all of them the equity of the junior incumbrancer was *superior*, because founded on a debt *existing at the date of the mortgage*, and therefore intervened and severed the connection between the original or prior advances and contract, and the subsequent ones. In those cases therefore, by reason of the intervention of a superior equity, the subsequent advance was equitably isolated, and had the character of an independent debt, and so was not covered by the mortgage. But it

derived that character from the equitable intervention, and not because it was actually independent. Where however there is not an equity *superior in itself*, which *therefore* intervenes and isolates the subsequent advance from the contract secured, I know of no principle of equity or decision, or any dictum, except one by the Master of the Rolls in *Rolt* v. *Hopkinson*, which was not adopted by the Chancellor or the House of Lords on appeal, which will separate the advance from the contract or condition, and give it the character of an independent debt, to let in an equity of a junior incumbrancer which is not superior.

If a junior incumbrancer, with an equal equity, may insist on a postponement, the rule that he who is first in time is first in right must be wholly disregarded. And I think we should look not merely at each particular *advance*, arbitrarily *assuming* that it is a new debt, without regard to superiority of the equity, but at the character of the contract secured, as this court did in the case of *Crane* v. *Deming*, 7 Conn., 387. In this case Boswell contracted to indorse for a certain amount, and the contract was to be operative so long as Goodwin & Co. desired and Boswell was willing. It is to be presumed that the contract was beneficial to Boswell, and he had a right, as against all the world (except the creditors of Goodwin & Co.) to continue to perform it. But Seymour & Co. step in and say, " We have a right to make, and do make voluntarily, a similar contract, and *nullify* yours, and you must not consider your contract as any longer operative ; for by making *just such an one*, and an advance covering the value of the property, we render the further performance of yours, by you, in reliance on your security, (although it is your desire and intention and legal right to perform it,) impossible."

Contracts for future credit, assistance or advances are very common and important. They should yield to the *rights of creditors*, but they should not thus be interfered with by a contracting party, or any stranger who is not a creditor. There is clear justice and equity as I think in the proposition as stated.

And further, serious difficulties will attend any other doctrine

in respect to notice. If the principle is adopted, in all cases, that each successive indorsement or each successive advance is a new debt or liability and a new mortgage, co-existing mortgages of that character, upon the same property, will be practically impossible. There must be either inquiry or notice, back and forth at each advance, for particulars of the new debts or new mortgages ; and, upon principle, that notice should be filed in the records with the original mortgage, or *actually* given. It is said that if the junior mortgage is recorded it is not necessary that the subsequent advances should be, for the condition in the mortgage is sufficient to put the prior mortgagee on inquiry. But this does not satisfy my mind or conform to the authorities. An ordinary mortgagee who is first in time is first in right, at least against every one who has not a superior equity, and need not trouble himself in respect to subsequent mortgages. In case of a mortgage to secure future advances, it is going a great way, in view of the authorities, but perhaps it is strictly equitable, that he should be held to constructive notice of a subsequent mortgage in favor of a *creditor*, who acquires by a mortgage an equity *superior* to his subsequent advances, because as to them such junior mortgage is superior, and therefore *prior in equity.* *Ter Hoven* v. *Kerns*, 2 Penn. S. R., 96. *Fry* v. *Bank of Illinois*, 11 Ill., 367. *Spader* v. *Lawler*, 17 Ohio, 371. *Craig* v. *Tappin*, 2 Sandf. Ch., 78. But there is no case where it has been hòlden that a prior mortgage to secure future advances, is not prior in time to a junior mortgage to secure future advances merely ; and it is not only asking too much in principle, that the prior mortgagee shall be put on inquiry after advances, but would be substantially impracticable, and no such mortgages would be taken. The junior may well inquire, because he is junior, but the senior ought not to be compelled to do so, except perhaps as to a mortgage that is on its face and by force of its *superior equity* prior to his.

The rule that he who is first in time is first in right, has been generally recognized as applicable to a mortgage for future liabilities and advances, and hence it has been very frequently holden that they should be watched with jealousy,

and limited strictly in amount. *Ketchum* v. *Jauncey*, 23 Conn., 123. *Truscott* v. *King*, 2 Selden, 147. 1 Hilliard on Mortgages, 286. But there would be no propriety in inserting any statement of the amount, or any limitation as to time, if the subsequent mortgage intervened and made every subsequent advance a new mortgage, of which notice must be given or inquiry made ; for the aggregate amount of the advances and the length of time they were to continue, would be of no importance ; they must notify or inquire, and interlace in equity at each successive indorsement or liability, and each would *beget* its own *independent* rights and liabilities. Such a doctrine appears to me to be inconsistent with the analogies of the law.

In the case of *Rolt* v. *Hopkinson*, 4 Jurist, 919, 1119, which has been pressed upon us, and which was a case where both mortgages were for existing debts and also for future advances, it did not appear that any advances had been made by the junior incumbrancer after the execution of his mortgage. Nor is that true of any other case cited, or which has come to my knowledge. This case is therefore without precedent. It was suggested in argument in *Rolt* v. *Hopkinson*, before the Master of the Rolls, (4 Jurist, page 919,) that in such case great difficulty would be experienced in respect to priority and notice, and in reply to that it was said by the Master of the Rolls, assuming that both parties had actual knowledge of the deeds, " I do not think it necessary to enter into the suggestions that Mr. Lloyd made of the difficulty of ascertaining how the advances would take priority—whether they would interlace each other—whether first one and then another is to take priority. Undoubtedly they would take priority according to the dates when they were made ; and therefore, if fresh advances authorized by the original deed were made, it would become the duty of the mortgagee to inform the other incumbrancers that they had made fresh advances, which would be a prior charge to any sums they had not already 'advanced." That opinion was *obiter* and in answer to a suggestion in argument, and proceeds on the ground that there is no priority in respect to the mortgages except for existing

debts, and that each new advance was a new mortgage or charge, *of which it was the duty of the party making it to give notice.* This is not in conformity with the view that it is the duty of each party to *inquire* before making advances, adopted in this case. But no such dictum in relation to priority was called for by the case, and no such principle as that every new advance was a new debt, was urged by the Chancellor when the case came before the House of Lords by appeal as a ground for *their action.* He stated the question thus:—"The case therefore simply resolves itself into this; a prior mortgage for present and future advances, and a subsequent mortgage of the same description; both mortgagees have notice of the deed of the other, and advances are made by the prior mortgagee, after the date of the subsequent mortgage, and with full knowledge of it." And the House of Lords, on the opinion given by the Chancellor, overruled *Gordon* v. *Graham,* on the ground, as further stated by the Chancellor, that the effect of the doctrine of that case would be, that " the claim of a second mortgagee" (for an existing debt) " under such circumstances, would be indefinitely postponed, according to the fluctuating nature of the balance under the prior mortgage." The ultimate decision was clearly right, for the subsequent mortgage covered an existing debt, for advances made before the mortgage was executed, which ought to take priority over subsequent advances by the first mortgagee, not only because such priority is *necessary to the right* of the creditor, for the reason given by the Chancellor, but because his lien attaches to the property *as it is at the time.*

4. If it is to be holden that in all cases where there are two mortgages on the same property to cover future advances or indorsements, each indorsement or advance is in the nature of a new independent debt and new mortgage, it certainly should be required of the party making a new advance that he should give notice of each advancement, when made, by filing a notice in the records with the original mortgage, or by giving actual notice to the other mortgagee. Such a requirement is in conformity with the principle on which the general rule is founded, that he who takes a mortgage, and wishes to protect

Boswell *v.* Goodwin.

his rights, must give notice of them. And this rule is as applicable to a new incumbrance as to an original one. The question is not whether the condition of the prior mortgage is sufficient to put a subsequent mortgagee on inquiry; that of course the petitioner concedes and claims; but whether he is bound, as prior mortgagee, to inquire in respect to a *subsequent* mortgage, whether any debt has accrued or not, and therefore whether the mortgage has become operative or not. If it be true that each advance is a new *independent debt and mortgage*, then no such inquiry can be required, for it is not true that a person can be put on inquiry after the fact of a subsequent mortgage, and each new advance is subsequent to the preceding one of the other party. It is the duty of a mortgagee who would protect his rights against a subsequent incumbrance, to give notice to some extent. If his notice is imperfect, it may be eked out by the principle that it is sufficient to put the other party on inquiry after further particulars. If the *new notice* of a new advance is imperfect, the rule will apply, but there must be a *new notice* to which it can apply. A party is put on inquiry after an *existing thing*; not after a possibility, *before* he has an intimation of its existence. The Master of the Rolls, although incorrect in assuming that in a case like this each new advance by either party would be an independent debt and new mortgage, was logically correct in saying that, if it were so, the party making the advance must give notice to the other.

In *McDaniels* v. *Colvin*, 16 Vermont, 300, it was holden that " where a mortgage deed provided for whatever account might subsequently accrue in favor of the mortgagee against the mortgagor, the mortgagee was entitled to hold it as security for whatever balance might become due him, notwithstanding a subsequent mortgage was executed to another person, unless the subsequent mortgagee had given express notice to the first mortgagee of his incumbrance, and also notified him that he must make no further advances on the credit of the first mortgage; and that the constructive notice, inferable from the fact that the second mortgage was put on the record in the town clerk's office, was not sufficient for that purpose."

And see also Sugden on Vendors, 465, 466 ; *Shirras* v. *Caig*, 7 Cranch, 34 ; *Truscott* v. *King*, 6 Barb., 346, and the same case in 2 Selden, 166, and the opinion of Judge Edmonds. This case finds that Boswell had no actual notice of any advancements, or that the mortgage had ever become *operative.*

5. Where there is a contract for a line of indorsements or discounts or advancements to a *limited and certain amount,* and a mortgage to secure it, (and such only are valid by our law,) although the continuance of the line is optional with the parties, and the contract is being performed, if another person takes a subsequent mortgage, either to secure a *new* loan or *line* of indorsements, discounts or advances, in the absence of express notice to the contrary the prior mortgagee may *presume* that the subsequent mortgage is taken subject to the fulfillment of his contract and subject to his *rights* under the contract and mortgage, and may safely continue to indorse or advance in pursuance of it.  *A fortiori* should this be so, where the subsequent mortgage is executed and received (and the fact appears on its face,) *subject to the prior mortgage—* which means subject to the rights of the prior mortgagee under the contract secured ; for the contract is presumptively beneficial to him, and he has a *right* to perform it if he pleases.

These propositions embody the principles by which I think the law should be settled in this case and in this state.   I am therefore of opinion :—

1. That Seymour & Co. acquired no *superior* equity by their mortgage or advancements, which would intervene to prevent further advances made by Boswell in reliance upon his mortgage.

2. That if their mortgage had given them such rights, they were not operative against Boswell until they gave notice to him of their advancements, and *that they should claim for them a preference over future advances by him.*

3. That in the absence of such notice and claim, Boswell, even with actual knowledge of the mortgage of Seymour & Co., might presume that they took their mortgage subject to his,

and continue his advances, especially as their mortgage was, on its face, made *subject to his.*

And therefore that Boswell is entitled to a decree for both notes upon an amended bill.

